[Sac. No. 1507.  In Bank.—September 19, 1907.]

## D. J. MANNIX, Respondent, v. WILLIAM M. TRYON, Appellant; J. E. HARRIS, Defendant.

APPEAL—NOTICE MUST BE SERVED ON ADVERSE PARTIES.—In order to confer jurisdiction upon an appellate court to entertain an appeal, all adverse parties to the controversy whose interests would be injuriously affected by a reversal of the judgment must be brought before the court and served with notice of the appeal.

ID.—MECHANIC'S LIEN—JUDGMENT AGAINST CONTRACTOR AND OWNER—APPEAL BY OWNER.—In an action by a subcontractor to foreclose a mechanic's lien, brought against the original contractor and the owner of the building, who had retained in his hands a part of the contract price more than sufficient to satisfy the claim of the subcontractor, a personal judgment was rendered in favor of the plaintiff against the original contractor for the amount claimed, and the judgment further decreed that a lien on the lot of the owner existed in favor of the plaintiff for said amount, and provided for a sale of the lot and the application of the proceeds to the payment of the judgment, and in the event that the proceeds were insufficient for that purpose, that there be docketed a judgment against the contractor for the amount of such deficiency, and that the plaintiff have execution against the contractor for the amount thereof. *Held,* on an appeal by the owner of the lot from the judgment, in so far as it decreed a lien, and provided for a sale thereof and the application of the proceeds to the satisfaction of the plaintiff's claim, that the original contractor, against whom the personal judgment was rendered, was not an adverse party who would be injuriously affected by a reversal of the judgment against the owner, and need not be served with notice of the appeal.

ID.—JURISDICTION—JUDGMENT FOR LESS THAN THREE HUNDRED DOLLARS.—When the superior court acquires jurisdiction of a suit to enforce a mechanic's lien, it has jurisdiction to render a personal judgment for the amount claimed, although the right to the lien is denied and the amount claimed is less than three hundred dollars.

ID.—CONTRACT WITH SUBCONTRACTOR—WARRANTY IN MAIN CONTRACT.—Where the contract between a subcontractor and the original contractor for the erection of a building related solely to the doing of a particular portion of the work on the building according to the requirements of the specifications in the main contract as to such work, the subcontractor is only bound by the terms of his agreement in that respect, and is not affected by other provisions in the main contract between the owner and original contractor expressly warranting that the latter would deliver the building properly and entirely finished and "in an undamaged state."

ID.—IMPLIED WARRANTY—WORK DONE ACCORDING TO SPECIFICATIONS.—
Section 1770 of the Civil Code, providing that "One who manufac-
tures an article under an order for a particular purpose warrants
by the sale that it is reasonably fit for that purpose," has no appli-
cation where the article to be furnished is to be supplied under a
contract requiring that it be made according to a certain plan or
certain specifications.

ID.—WORK IN BUILDING—PLASTERING.—A subcontractor who contracts
to do the plastering and hard-finish work in a building according to
certain plans and specifications, and does so in a workmanlike man-
ner, using the materials called for by the specifications, does not
impliedly warrant that the completed work will be of a particular
color.

ID.—ATTORNEYS' FEES NOT ALLOWABLE.—The statute purporting to al-
low attorneys' fees in an action to enforce a mechanic's lien is
unconstitutional.

APPEAL from a judgment of the Superior Court of Sac-
ramento County. J. W. Hughes, Judge.

The facts are stated in the opinion of the court.

A. L. Shinn, and R. L. Shinn, for Appellant.

R. Platnauer, for Respondent.

LORIGAN, J.—This is an action to foreclose a mechanic's
lien. The defendant Tryon, owner of a lot in the city of
Sacramento, contracted with the defendant Harris to erect
a three-story building according to certain plans and specifi-
cations. The plaintiff, as a subcontractor, entered into a con-
tract with the original contractor, Harris, to do the plaster-
ing and hard-finish work according to said specifications, and
claiming to have performed it, and that a balance of one
hundred and seventy-eight dollars was due him therefor, filed
a lien and commenced this action against the original con-
tractor and the owner of the lot to enforce its payment. A
personal judgment was rendered in favor of plaintiff against
the original contractor, Harris, for the amount claimed, and
it was then further decreed in the judgment that a lien on
the lot of the defendant Tryon existed in favor of plaintiff
for said amount, provided for a sale of the lot and the appli-
cation of the proceeds to the payment of the judgment, and
in the event that the proceeds were insufficient for that pur-

pose that there be "docketed a judgment against the defend-
ant J. E. Harris for the amount of such deficiency which may
remain unpaid on the judgment of plaintiff, and that plaintiff
have execution against the defendant for the amount thereof."

The defendant Tryon appealed from the judgment, a bill
of exceptions accompanying his appeal therefrom, and served
his notice of appeal on the plaintiff alone. The notice of
appeal given by defendant Tryon was only intended to em-
brace an appeal from the judgment in so far as it affected
him by decreeing a lien upon his property, providing for the
sale thereof and application of the proceeds to the satisfac-
tion of the claim of plaintiff. The original contractor, Harris,
against whom the personal judgment was entered, took no
appeal, nor was any notice of appeal served on him by the
appellant, Tryon.

The district court of appeal for the third appellate district,
before which this matter came up originally, dismissed the
appeal on motion of respondent, on the ground that Harris,
the original contractor, was an adverse party within the mean-
ing of section 940 of the Code of Civil Procedure, and should
have been served with notice of appeal; that he was inter-
ested in maintaining the judgment of lien; that a reversal
of the judgment in that respect would be against his interest;
and not having been served with such notice, the court was
without jurisdiction to determine the appeal on its merits. A
petition by appellant for a further hearing and determina-
tion of the cause before this court was granted, and upon the
hearing here the motion to dismiss the appeal is renewed and
submitted with the submission of the cause upon its merits.

The rule, of course, is that in order to confer jurisdiction
upon an appellate court to entertain an appeal all adverse
parties—parties to the controversy whose interests would be
injuriously affected by a reversal of the judgment—must
be brought before the court. Persons whose interest in the
subject-matter is determined by the judgment appealed from,
and which interest will be injuriously affected by its reversal,
are adverse parties within the meaning of section 940 of the
Code of Civil Procedure upon whom notice of appeal must
be served. It is said "an adverse party to an appeal means
the party whose interest in relation to the subject of the
appeal is in conflict with a reversal of the order or the decree

appealed from, or the modification sought by the appeal.'' (*Randall* v. *Hunter,* 69 Cal. 80, [10 Pac. 130] ; *Green* v. *Berge,* 105 Cal. 52, [45 Am. St. Rep. 25, 38 Pac. 539] ; *Pacific Mut. Life Ins. Co.* v. *Fisher,* 106 Cal. 224, [39 Pac. 758] ; *Mohr* v. *Byrne,* 132 Cal. 250, [64 Pac. 257].)

If this is the relation which the original contractor Harris bears to the appeal,—if his interest in the judgment appealed from is such that its reversal will injuriously affect him,— then, as an adverse party, he should have been served with the notice of appeal. Respondent insists that such is his relation to it, his contention being that it is to the interest of the original contractor that the judgment of the trial court establishing the lien should stand, because by enforcing the lien against appellant's property a sufficient sum might be realized through a sale of it to fully discharge the indebtedness due to plaintiff and relieve the original contractor from all obligation to plaintiff; that to reverse the judgment so as to defeat the lien would deprive the original contractor of such advantage under the judgment establishing it, and leave him subject to have the personal judgment recovered against him enforced under execution. In this view, it is insisted by respondent that as the original contractor will be injuriously affected in his interest if it is reversed, it was essential that notice of appeal be served upon him.

The position of appellant is, that a reversal of the judgment, so far as the lien is concerned, which alone is involved on this appeal, cannot injuriously affect the original contractor, it being asserted that if the lien be eliminated from the judgment by a reversal, the effect would be, although no appeal was taken by the original contractor therefrom, to destroy the personal judgment against him; that within the doctrine of *Miller* v. *Carlisle,* 127 Cal. 327, [59 Pac. 785], the jurisdiction of the superior court to entertain this action, as the claim was for less than three hundred dollars, depended solely on the assertion of the right of lien and its establishment by that court, and if it should be determined upon this appeal that there was no lien, then, as the amount of the claim asserted was less than three hundred dollars, the superior court had no jurisdiction to enter a personal judgment against the original contractor for one hundred and seventy-eight dollars; that the personal judgment is void and falls with the rever-

sal of the judgment establishing the lien on which jurisdiction of the superior court in the cause alone depended. And it is further insisted by appellant that even if, as claimed by respondent, the personal judgment against the contractor is a valid one which would be unaffected by this appeal, the contractor could not be prejudiced by a reversal of the judgment establishing the lien; that the liability of the contractor for the full amount of the claim is fixed by it, and such liability would not be affected whether that portion of the judgment establishing the lien be reversed or affirmed.

It is only proper in connection with this statement of appellant's position to say that when his briefs were filed, and the case of *Miller* v. *Carlisle* was cited and relied on in support of that position, the case of *Becker* v. *Superior Court,* 151 Cal. 313, [90 Pac. 689], had not been decided. In this latter case a conclusion was reached that the rule stated in *Miller* v. *Carlisle* was not the correct one, but, on the contrary, the true doctrine is that when the superior court acquires jurisdiction by the filing of a suit to enforce a lien of mechanics and others, under the statute relating to such liens, it has jurisdiction to render a personal judgment for the amount claimed, although the right to a lien is denied and the amount claimed is less than three hundred dollars.    We mention this in justice to appellant, while at the same time a reference to this latter case of *Becker* v. *Superior Court* shows that the personal judgment entered against the original contractor in this case is a valid, subsisting judgment, which, as it is not appealed from, stands unaffected or unaffectable by any action which this court may take on the appeal of appellant involving the validity of the lien. Under this personal judgment the primary obligation to pay the amount due plaintiff is fixed upon the original contractor, such primary obligation being secured by a lien enforced against the property of the owner. This being the condition and effect of that judgment, it will be seen, upon a little reflection and consideration of the record before us on its merits, that it can be of no moment to the contractor whether upon this appeal of Tryon, the owner, it be determined the lien is valid or invalid—whether the judgment as to it be affirmed or reversed. We say, upon the record before us, because it is upon an examination of that record in connection with the rights of owners charged with a lien as against orig-

inal contractors under the Mechanics' Lien Law that we feel satisfied warrants a conclusion that no right of the original contractor here can be affected adversely or at all by a reversal of the judgment as to the lien. It, of course, appears from the record before us that the primary obligation to pay the indebtedness for which the judgment was obtained was upon the original contractor. He was personally responsible to the subcontractor for the payment of the claim under his contract with him. The law merely gave the subcontractor, in default of payment by the contractor, a right of lien against the owner's property enforceable by foreclosure to secure the payment which the contractor was primarily obligated to make. But the law also (Code Civ. Proc., sec. 1193) provides that where a lien is filed against the property of the owner on an indebtedness due from the original contractor to the lien claimant, the original contractor shall defend against any action brought thereon at his own expense; that during the pendency of the action the owner may withhold from the contractor the amount of money for which such lien is filed; that in case of judgment against the owner or his property upon the lien, he shall be entitled to deduct from any amount due the contractor the amount of such judgment and costs, and if the amount thereof shall exceed the amount due by the owner to the contractor, or if he has settled with the contractor in full, he shall be entitled to recover back from the contractor any amount paid by him in excess of the contract price and for which the contractor was originally the party liable.

It appears from the record here that there is in the hands of the appellant, owner of the lot, over one thousand nine hundred dollars due from him to the original contractor. Under these circumstances, while it may be said theoretically, and on the face of the judgment itself, that the contractor would be benefited by having the judgment of lien stand and satisfaction of the claim of plaintiff had by a sale of the owner's property, yet practically, and by virtue of the section of the code referred to, no advantage or benefit accrues to him at all thereby. In any event—reversal or affirmance—his primary liability for payment of the claim to plaintiff remains unaffected under the personal judgment obtained against him. Under any theory he can only claim that he would be injuriously affected by a reversal, because under the judgment as it

stands he is benefited by the enforcement of the lien. But under the section of the code referred to and upon the record this theory is illusive. If the judgment establishing a lien stands and is enforced by a sale of the property, or is discharged by the owner through payment of the judgment, the owner is entitled to reimburse himself from the moneys in his hands due the contractor, which in this particular case the record shows are ample for that purpose. All this being true, it is obvious that in this particular case on a consideration of the motion on the merits of the appeal, neither an affirmance nor a reversal of the judgment so far as it establishes a lien against appellant's property could be of any advantage to the original contractor. If it were reversed, he would be still liable under the personal judgment against him, which is unaffected by this appeal, and under which the primary liability on his part to plaintiff is fixed; and if it were affirmed, the owner would have the right, which in this case could be effectively exercised, of reimbursing himself or discharging the judgment as a lien against his property from moneys in his hands due the original contractor, or could pay the judgment in discharge of the lien to the subcontractor directly. Under this view it appears to us that it is a matter entirely immaterial to the original contractor whether it be decided on appeal that the portion of the judgment decreeing a lien be valid or invalid. No substantial right of the original contractor under the judgment of lien is affected. Hence he was not a party interested in maintaining it and not an adverse party upon whom a notice of appeal should have been served.

The district court of appeal in dismissing this appeal when the matter was before it, based its decision on *Lancaster* v. *Maxwell*, 103 Cal. 67, [36 Pac. 951], which it cited as justifying its action. In that case, however, it does not appear that any personal judgment was rendered against the original contractor fixing a primary liability on his part to the subcontractor for the entire amount of his claim. The personal judgment there rendered was for such a deficiency as appeared after the sale of the property, and this fact seems to have controlled the decision. In the case at bar the personal judgment is for the entire amount of the claim, separate and distinct from any deficiency judgment which it is provided shall be docketed against the original contractor. Nothing is said in the

portion of the judgment providing for such docketing that it shall be docketed as a personal judgment. This would be its effect, not, however, by virtue of the provision for docketing, but because, independent of it, there was a personal judgment expressly given against the original contractor in another part of the judgment. If in the case at bar the judgment, so far as it established a lien, were reversed and the deficiency judgment provided to be docketed against the original contractor were to fall with it, this would nevertheless leave the personal judgment against the original contractor entered against him elsewhere unaffected and subject to enforcement upon execution. Aside from this, in the Maxwell case, the effect of section 1193 of the Code of Civil Procedure upon the rights of the owner of the premises affected by the lien against the original contractor did not seem to have been presented for consideration, nor the record examined upon the merits of the appeal to ascertain whether applying this section to the matters disclosed by it, and properly to be considered on the motion, any injury to the original contractor could possibly result from a reversal of the judgment establishing the lien. The consideration of these matters differentiates this case from the Maxwell case sufficiently to make the ruling there inapplicable here, even if that ruling should be deemed correct in principle upon the record to which it is applied, which, we think, is extremely doubtful.

The motion to dismiss the appeal is therefore denied.

Now, as to a consideration of the appeal on its merits. Aside from the question of attorneys' fees, the principal contention of appellant is that the findings made by the court in support of the judgment in favor of the plaintiff are not sustained by the evidence.

As we have heretofore stated, appellant entered into a contract with J. E. Harris to erect a building for him for the sum of seven thousand six hundred dollars, according to certain plans and specifications, and the respondent, as subcontractor, contracted with the latter to do the plastering and hard-finish work according to specifications providing therefor for the sum of seven hundred and fifty dollars. As the work progressed he was paid the amount of his contract price, except one hundred and seventy-eight dollars, for which the lien herein was filed and to recover which the suit was brought.

The court found that plaintiff completed his contract according to its terms, and it is claimed that this finding is not supported by the evidence because there were certain discolorations on the plastering appearing after the completion of the work. The contract between the owner and the original contractor for the construction of the building contained specifications relative to the plastering thereof, and the contract between plaintiff and said original contractor embraced these latter specifications. The specifications set forth in detail the character and quality of the material to be furnished for the mortar and hard finish to be used in the work, the manner in which they should be compounded and applied and the work done, and the evidence shows that in discharging his contract plaintiff used exactly the materials that were required by the specifications and performed the work in a workmanlike manner, but that upon its completion portions of the surface of the walls showed a yellowish tint appearing in some places in streaks and in others in spots of a cloud-like form. How these discolorations were caused is not disclosed by the evidence. In fact, the testimony showed that the cause of them was unknown. Such discolorations might occur, the evidence shows, from various extraneous causes having no relation to the character of the materials used or the workmanship employed, and might occur where the best material and workmanship, as in the case at bar, were used and employed, and still be inexplicable. The usual result, however, of the use of good materials properly applied is to produce a white coat or surface on the walls, and it is insisted by appellant that because that was not the result of the work of plaintiff his contract was not properly performed; that it was the duty of plaintiff to show that such discolorations were occasioned by some cause for which he was not responsible. In that connection it is insisted that there was both an express and implied warranty accompanying his contract that the rooms should be finished so that the walls would be white. The express warranty is based upon a provision of the main contract between the owner and the original contractor that the latter was to deliver appellant the building properly and entirely finished and "in an undamaged state." It is sufficient, however, on this point to say that the subcontractor was not a party to this main contract, its provisions were not incorporated in his

contract with the original contractor, and he is not bound
by its terms. His contract was with the original contractor
alone, and related solely to doing the plastering and hard
finishing according to the requirements of the specifications
in the main contract, and he is only bound by the terms of his
agreement in that respect, and it is not claimed that the agree-
ment between plaintiff and the original contractor contained
any requirement or warranty that the walls should be of any
particular color.

But it is said there was an implied warranty that they should
be white; that as the usual result from the use of the materials
specified and their application would be to produce a white
surface this result was contemplated and impliedly warranted,
and it is insisted that this contention is supported by sections
1769 and 1770 of the Civil Code. The only one of these sec-
tions which could possibly have any relevancy is section 1770.
That section provides that "One who manufactures an article
under an order for a particular purpose, warrants by the sale
that it is reasonably fit for that purpose." But it is obvious
that this section has no application to the matter under consid-
eration. As its language imports, the section only applies
where an article is manufactured for a particular purpose. It
contemplates that the manufacturer has selected the materials
and determined the workmanship whereby the finished article
is supplied for the particular purpose designed. It does not
apply where the article to be furnished is to be supplied under
a contract requiring that it be made according to a certain plan
or certain specifications. Now, in the case at bar we have
seen that there was no express agreement that the plaintiff
should plaster and hard-finish the appellant's house so as
to leave the walls white. There was no agreement that any
particular result should follow. He did not agree generally
to plaster the dwelling, which would leave to him the selection
of the materials and the method of doing the work. His
agreement was to do it in a way that the owner and the orig-
inal contractor had designed; according to the specifications
which they had agreed on. He had no discretion in the matter.
When he followed strictly those specifications, used exactly
the materials they called for in the composition of the mortar
and hard finish, and applied them in a workmanlike manner,
he did all his contract called for. He did not contract for re-

sults, but only to do the work in a specified way. If the usual result of white walls and ceilings did not follow, he was not responsible for it, unless there was some default on his part in furnishing the materials called for in the specifications or in doing the work with them. The court found, and the evidence fully sustained the finding, that the plaintiff had not been remiss in either particular. Under these circumstances, as he made no express warranty as to results, and plastered and hard-finished the rooms with the materials specified in the contract, and did the work skillfully, he did all that he had contracted to do. He did not expressly warrant any particular color, the specifications did not call for any, and the work being done in a workmanlike manner with the materials designated in the specifications to be used, the plaintiff is not responsible under any implied warranty for the result. (*Bancroft* v. *San Francisco Tool Co.*, 120 Cal. 228, [52 Pac. 496]; *McKnight-Flintic Stone Co.* v. *Mayor*, 160 N. Y. 72-84, [54 N. E. 661].)

There is nothing in the other points made by appellant, save as to the allowance to plaintiff of forty dollars attorneys' fees in the foreclosure of the lien. Since the appeal herein was taken it has been decided by this court that the statute allowing attorneys' fees in an action to enforce a mechanic's lien is unconstitutional. (*Builders' Supply Depot* v. *O'Connor*, 150 Cal. 265, [88 Pac. 982].) This, however, only requires a modification of the judgment. In that respect it is ordered that the judgment be modified by striking out therefrom the allowance of attorneys' fees, and as so modified the judgment is affirmed.

Angelotti, J., McFarland, J., Sloss, J., Henshaw, J., and Shaw, J., concurred.