[Civ. No. 5004.   First Appellate District, Division One.—October 16, 1924.]

## THE STEEL TANK AND PIPE COMPANY OF CALIFORNIA (a Corporation), Respondent, v. PACIFIC FIRE EXTINGUISHER COMPANY (a Corporation), Appellant.

[1] CONTRACTS — CONSTRUCTION AND DELIVERY OF TANK — USE OF UNION LABOR.—Where plaintiff's assignors merely undertook to furnish to defendant a steel tank of certain agreed size and specifications, for a specified sum, and to deliver the same on top of a certain one-story building in a certain city, the building thereafter to be designated by defendant, and they did not undertake to erect at all events the tank on the building which was thereafter designated, the ownership and location of which was unknown to them at the time of the making of the contract, and they were not conversant with the labor conditions in said city, as was defendant, and the contract between the parties contained no agreement as to the character of the labor to be used by plaintiff's assignors, whether union or otherwise, plaintiff's assignors were not bound to submit to a demand that a union crew be employed.

69 Cal. App.—15

[2] ID. — IMPLIED OBLIGATIONS — DELAYS — LIABILITY FOR LOSSES. — Where one has assumed a positive obligation the corresponding obligation not expressed in terms will nevertheless be implied as resting upon the party to whom the agreement runs to be answerable for all losses caused by delays which his control of the work should make him responsible for.

[3] ID. — PREVENTION OF PERFORMANCE — LIABILITY OF PARTY AT FAULT. If a contractor is prevented from completing his contract by the fault of the other party thereto he is unquestionably entitled to recover for the work he has performed and for all damages suffered by him in consequence of such prevention, as each party to a contract impliedly agrees not to prevent the other from performing or to render performance impossible by any act of his own.

(1) 35 Cyc., p. 110.    (2) 17 C. J., p. 858, sec. 172.    (3) 13 C. J., p. 650, sec. 723; 17 C. J., p. 857, sec. 787.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Walter Perry Johnson, Judge. Affirmed.

The facts are stated in the opinion of the court.

Jordan & Brann for Appellant.

Thomas, Beedy & Lanagan and J. W. Paramore for Respondent.

TYLER, P. J.—Action for goods sold and delivered and services performed.

The material facts are contained in the findings of the trial court which show in substance as follows: That a certain partnership made and entered into an agreement in writing with the defendant wherein and whereby the copartners undertook and agreed to furnish to defendant a steel tank of certain agreed size and specifications for the sum of $1,380, and to deliver the same on top of a certain one-story building in the city of Fresno, the building to be thereafter designated by defendant. At the time of so contracting the partners did not know the name or location of the building upon which the tank was to be erected, or who

3. What excuses nonperformance of contract, note, 18 **Am. Dec.** 452. See, also, 6 **R. C. L.** 1012; 6 Cal. Jur. 436.

was the owner thereof, nor were they conversant with labor conditions in Fresno as was the defendant. Defendant knew that the copartners were engaged in business and operated and maintained their works with nonunion labor. Pursuant to the contract defendant thereafter designated a certain building, known as the "Wonder Store," in the city of Fresno, upon which building it had independently contracted with the owner to install a sprinkling system, and of which said installation the tank to be furnished to defendant by said copartnership was to form a part. Thereafter and within the time in which the contract was to be performed the said copartnership duly shipped said tank and materials to be used in connection therewith from their place of business to defendant in the city of Fresno, and at the same time sent their field crew, consisting of a superintendent and laborers, which crew was adequate and competent to accomplish the erection of the tank as provided for. Defendant, notwithstanding this tender of performance on the part of the copartnership, refused to accept the same or to allow the laborers to perform their work, and it ordered the copartnership to remove the crew from the premises. This was accordingly done. The contract between the copartnership and defendant contained no provision requiring the tank to be erected by union labor or any designated class of labor other than that it should be physically and technically qualified and competent to perform the work contracted to be performed. Defendant's refusal to allow the work of the erection of the tank with a nonunion crew was dictated solely by the architect representing the owner of the building, who refused to allow any work undertaken by defendant to be performed by nonunion labor. Upon being directed to discontinue their work the copartnership requested defendant to assume responsibility for the care and preservation of the tools and materials belonging to said partnership, but this the defendant refused to do. Watchmen were thereupon employed by the copartnership for this purpose. Thereafter defendant took possession of the tank and materials and caused the same to be installed and erected upon the building.

Prior to the commencement of this action the copartnership for value set over and transferred to plaintiff, a corporation, all of its right, title, and interest in the claim against

defendant arising out of defendant's breach and prevention of performance of its contract.

Other facts show that subsequent to the refusal of the architect to permit the nonunion crew to install the tank plaintiff's assignors were notified to proceed with the work. In this notice nothing was said about what character of labor was to be used. On receipt of this notice plaintiff's assignors telegraphed to the architect, informing him that defendant had directed them to proceed with the erection of the tank, and requesting that they be specifically granted or refused the right to send the same field crew to complete the work. To this inquiry the architect replied that it would be impossible to use nonunion men. Later defendant again demanded in writing that the copartners proceed with the work within three days from a certain date, failing in which defendant would furnish the men and materials and charge the same to their account. This demand not being complied with, defendant itself, as above recited, proceeded with the work. The record also shows that the employment of a union crew would have entailed an additional cost of between three and four hundred dollars. It further shows that the bid of the copartnership was based upon the right to use a crew of nonunion men.

At the conclusion of the case the trial court rendered judgment in favor of the plaintiff in the sum of $1,530 and costs, which included the price of the tank and damage due to defendant's prevention of performance of the work. This is an appeal from said judgment.

[1] Appellant's main contention is that as plaintiff's assignors did not make their offer to erect the tank conditional upon their right to use nonunion laborers, they were bound to submit to the demand that a union crew be employed. In support of this claim we are referred to the principle of law that where one makes a promise which cannot be performed without the consent or co-operation of a third person he is not excused from liability because of his inability to secure the required consent or co-operation.

We fail to see how this principle in any way applies to the facts of this case. Plaintiff's assignors never undertook to erect at all events the tank on the building in question. Their contract was to erect one upon a one-story building

which was not designated. They knew nothing concerning the ownership or location of the same. The contract between the parties contained no agreement as to the character of labor to be used, union or otherwise. Contrary to appellant's contention, if defendant desired the more expensive labor it should have so provided in its contract. Defendant's contract with the owner of the building, which is in evidence, contains no provision as to the character of labor it should use; on the contrary, it gives it full and complete control of the work in this particular, for it provides that it shall have the right to insist that access to the building be given to laborers engaged thereon. Under this right it had full power to see to it that the workmen of respondent's assignors should not be interfered with. Aside from this, the contract of respondent's assignors with defendant was entirely independent and apart from the latter's contract with the owner of the building. There was no privity existing between the owner and respondent's assignors. They were only bound by the terms of their agreement and were in no manner affected by any contract between defendant and the owner (*Mannix* v. *Tryon,* 152 Cal. 31 [91 Pac. 983]). Whatever understanding, therefore, if any, existing between the owner and defendant with reference to the character of the men to be employed to do the work, such understanding could in no manner justify defendant preventing plaintiff's assignors from completing their contract. That it did prevent them there is no question, and defendant must suffer the consequences. [2] Where one has assumed a positive obligation the corresponding obligation not expressed in terms will nevertheless be implied as resting upon the party to whom the agreement runs to be answerable for all losses caused by delays which his control of the work should make him responsible for (*Norcross* v. *Willis,* 198 N. Y. 336 [91 N. E. 803]). [3] If a contractor is prevented from completing his contract by the fault of the other party thereto he is unquestionably entitled to recover for the work he has performed and for all damages suffered by him in consequence of such prevention. Each party to a contract impliedly agrees not to prevent the other from performing or to render performance impossible by any act of his own.

We do not deem further discussion of this case necessary. The mere reading of the facts is sufficient to show that the appeal is without merit.

The judgment is affirmed.

Knight, J., and St. Sure, J., concurred.