The plaintiff Colwell was formerly a manager or general agent in North Dakota for the defendant Union Central Life Insurance Company; and he brought this action for the purpose of obtaining an accounting from the defendant insurance company for commissions on renewal premiums collected by the company on business written while plaintiff was such manager or general agent. At the time the action was instituted the defendant Security National Bank of Fargo was the holder of an assignment given by the plaintiff of moneys coming to him for commissions under his contract with the defendant insurance company, — such assignment having been given as collateral security for the payment of an indebtedness of plaintiff to said bank. It appears that there was some dispute between the plaintiff and the defendant bank as to what renewals were covered by the assignment and hence the bank was joined as a party defendant. After the commencement of the action and before the trial thereof the *Page 772 
claim of the bank was assigned to one Grady who became the owner and holder of all the bank's rights under the assignment. Grady intervened in the action, and during the first day of the trial thereof and before the matters in issue herein between appellant and respondent had been tried the plaintiff and said Grady entered into a written stipulation settling the matters in dispute between them as regards the assignment. The stipulation provides that said Grady has a first lien upon all renewal commissions coming to the plaintiff from the defendant insurance company, and that said Grady holds the same as collateral security for the payment of certain specified indebtedness owing to him by the plaintiff.
The facts necessary to an understanding of the issues involved on this appeal are substantially as follows: On May 23, 1913 the plaintiff and the defendant insurance company entered into a written contract by the terms of which the plaintiff was appointed manager of the defendant insurance company "to procure applications for life insurance, to deliver policies, to collect premiums when furnished with the policies or receipts; and to perform such other duties as may be required in connection therewith." The contract contained a provision to the effect that the parties had executed it in duplicate "in lieu of all former contracts, if any, for the term of ten years." The territory covered by the contract was approximately the eastern half of the state of North Dakota. According to the terms of the contract the plaintiff was to be paid a certain percentage of the first year's premiums and certain commissions on specified renewal premiums (according to the schedule set forth in the contract) on policies written under the contract. This contract was fully completed; and it is undisputed that if there had been no further contractual relations between the parties the plaintiff would be entitled to receive from the defendant insurance company commissions upon the renewal premiums according to the terms specified in the contract.
On May 23, 1923 the parties entered into another contract. The same printed form was used for the second contract as had been used for the first but certain changes were made in typewriting. Both the first and the second contract contained this provision: "The parties to this contract have executed it in duplicate, in lieu of all former contracts, *Page 773 
if any, for the term of ten years." The second contract contained the following provisions:
7. "Renewal Rights — That the party of the first part will pay to the party of the second part, if living otherwise to his estate, subject to liens, if any, the balance of nine renewal commissions from the date of each particular policy, at the rate provided in Article 4, both upon the business written under this and former contract; less, in the event of termination of this contract, a collection fee of two (2%) percent, excepting that on premiums on which sub-agents receive renewals, the collection fee shall be but one (1%) percent.
16. "Extra Second Year Renewal — That the party of the first part, during the continuance of this contract, will pay to the party of the second part, an extra renewal commission of five (5%) percent, as the second year premiums are collected and reported in cash, on policies issued on or after May 23, 1922.
17. "Renewals — Eleventh to Fifteenth Year — That the party of the first part, during the continuance of this contract, will pay to the party of the second part, a renewal commission of five (5%) percent of the cash reported on the eleventh to fifteenth years' premiums inclusive, on the business written under former contract prior to May 23rd, 1922."
Both contracts contained a provision authorizing the insurance company to terminate the same upon certain specified grounds. It was claimed by the insurance company that the plaintiff had violated his contract in such manner as to authorize a termination thereof, and on or about June 4, 1924, the plaintiff, at the request of the defendant insurance company, resigned as manager, and on that day the following contract was entered into between the parties:
"It is hereby agreed by the Union Central Life Insurance Company with Arthur F. Colwell, in view of his resignation presented and hereby accepted this date as Manager of the Union Central Life Insurance Company, under contract dated May 23, 1923, and all amendments thereto, if any, that the following commissions will be paid to said Arthur F. Colwell, subject to sub-agents' interests, any indebtedness due the Company now or hereafter discovered, and subject to any legal assignments: *Page 774 
"Full first year commissions according to contract if any are unpaid at this date, or on any outstanding first year notes when paid.
"During a nine year period from date, the balance of nine renewal commissions, or the balance of four renewal commissions on Five Year Term policies, as follows: —
"Five percent (5%) on Endowment policies paid by less than twenty annual premiums and on Personal Life Income Deferred Annuity policies, and seven percent (7%) on Business Protection policies three percent reserve, and seven and one half percent (7 1/2%) on all other policies; less a collection fee of two percent (2%). Also a renewal commission of five percent (5%), less a collection fee of two percent (2%), of the cash premiums paid on the eleventh to fifteenth years' premiums inclusive on the business written prior to May 23, 1922, under the former contract prior to the contract of May 23, 1923. Also an extra renewal commission of five percent (5%) as the second year premiums are paid in cash on policies issued on and after May 23, 1922.
"Furthermore any and all future interest herein described shall cease if said Arthur F. Colwell in any manner interferes with the Company's business.
"In the event of the death of said Arthur F. Colwell before all such renewals have been paid, the balance remaining unpaid shall be paid to his estate.
"It is agreed that Arthur F. Colwell shall furnish a statement of the amounts owing by him to his sub-agents on this date and approved by each agent. If said statements are not furnished and if any amounts due his sub-agents are not paid by said Arthur F. Colwell within three months from date, unless he shows a valid set off, the Union Central Life Insurance Company is authorized to pay said amounts deducting them from any amounts due Arthur F. Colwell under this agreement."
Some time subsequent to June 4, 1924 the plaintiff accepted a position as state manager in North Dakota for the Reliance Life Insurance Company of Pittsburgh, Pennsylvania. After accepting this position he caused letters and circulars to be sent to some of the policy-holders and some of the sub-agents of the Union Central Life Insurance Company, and he also had interviews with some of such sub-agents. In the letter sent to the sub-agents reference is made to the severance *Page 775 
of the relations between the plaintiff and the defendant life insurance company and plaintiff's acceptance of the position of state manager for the Reliance Life Insurance Company. In the letter it is said:
"In making the change, I found myself able to serve my clients in a much larger way, than I could possibly do with the Union Central, for not only does the Reliance offer many more kinds of policies, but it also offers Accident Health protection along with its policies. . . .
"It will be a great pleasure indeed to continue to serve you in the future, as it has been in the past, and to now offer all you might need, or can possibly secure in Life, Accident and Health Insurance, the `Perfect Protection' Service of the Reliance Life Ins. Co., in my opinion the greatest Life Insurance Company in America.
"It will pay you to investigate this Service before making further investments in Life, Health or Accident Ins. I enclose some literature for your information. If not interested yourself,will appreciate having you pass it along to others, with thestatement that we are looking for real big men and women torepresent us in this State, believing that we can offer them morein every way than can any other Company. We have a real job forreal men and women. What is more, we are paying them well fortheir services.
"Thanking you for your patronage and co-operation in the past, and with very best wishes, I remain etc."
Inclosed with the letter was a typewritten statement entitled, "Reliance Life Insurance Company v. Union Central and the reasons (in part) why I have made the change." The body of the statement consists of a comparison in parallel columns of the life insurance policies issued by the two companies. The comparison is distinctly favorable to the Reliance Life Insurance Company and if correct would doubtless have a tendency to show that that company issues policies much more advantageous to the policy holders and offers a better field to soliciting agents than does the Union Central Life Insurance Company. It was claimed by the defendant life insurance company that this conduct on the part of the plaintiff constituted a violation of the provision in the agreement of June 4, 1924 to the effect that "any and all future interests herein described shall cease if said Arthur F. Colwell in any manner interferes with the company's business," and on November 9, *Page 776 
1924 the president of the defendant life insurance company wrote the plaintiff Colwell a letter from which we quote:
"I regret the occasion to advise that on account of your flagrant violation of both the spirit and the letter of our agreement of June 4, 1924, the same is hereby annulled, and that such future renewals as may be allowed, or credited to your account or assigns, will be solely at the pleasure and option of the company.
"That you may be advised of our present attitude we will without waiving any of our rights under the annulment, credit your account hereafter, unless otherwise advised." (Here follows a statement of the credits to be allowed and the disposition which will be made of them.)
The plaintiff Colwell protested against this action on the part of the defendant insurance company. The protest was of no avail and he thereupon instituted this action for an accounting. The case was tried to the court without a jury and resulted in findings of fact, conclusions of law and order for judgment sustaining the position of the defendant insurance company in every particular. While there is no specific finding to that effect the findings of fact all seem to be predicated upon the theory that the first contract, that is, the contract of 1913, was merged in the contract of 1923 and that both contracts were in turn merged in, and are controlled by, the contract of June 4, 1924. The trial court found that the plaintiff had violated the contract of 1923 so as to authorize a termination thereof by the defendant insurance company at and prior to June 4, 1924; that "there is no consideration for the agreement of June 4, 1924 to allow plaintiff certain renewal commissions, except in consideration of plaintiff not inter-meddling nor in any way interfering with defendant's business in North Dakota." The court further found that plaintiff had violated the spirit and letter of the contract of June 4, 1924; that the defendant insurance company had an absolute right to annul such agreement upon discovery of the circulars and letter sent out by the plaintiff to the sub-agents; that all the rights under both the contract of May 23, 1913 and the contract of May 23, 1923, ceased and became null, void and unenforcible by reason of plaintiff's violation of the terms and conditions of the contract of May 23, 1923, and that all rights of the plaintiff, and all persons claiming under him, under the contract of June 4, 1924, ceased and became null and void by reason of plaintiff's interference *Page 777 
with the company's business. The court concluded as a matter of law that all said three contracts "have ceased, determined, and are invalid, void and unenforcible as against said defendant;" and "that the sole and only rights which the plaintiff or any of the parties to this suit or any of the persons claiming under, by or through them, have as against the defendant, the Union Central Life Insurance Company, are contained and set forth in the letter of the Union Central Life Insurance Company to Arthur F. Colwell, dated November 29, 1924." The court further found that according to the terms of such letter, and the showing made by the defendant company, it had in its possession a certain sum of money, which sum the company was directed to pay to the intervenor Grady. A certain other sum the company was directed to retain, as such moneys were claimed by one Tucker, who had not been made a party to the action.
The plaintiff has appealed from the judgment and demands a trial anew in this court.
At the threshold of the case we are met with a motion on the part of the defendant life insurance company for a dismissal of the appeal on the ground that the intervenor Grady has not been made a party to the appeal. The motion to dismiss is grounded upon § 7821, Comp. Laws 1913, which provides that a notice of appeal must be served upon "the adverse party." It is contended by the respondent life insurance company that Grady was an adverse party within the purview of said section 7821 and that the failure of the plaintiff to serve notice of appeal upon him is a fatal jurisdictional defect, requiring a dismissal of the appeal.
It is elementary that a party who makes a motion has the burden of sustaining the grounds thereof. A party who moves for a dismissal of an appeal on the ground that an adverse party has not been served with notice of appeal has the burden of showing from the record, (1) that the party not served was an adverse party within the purview of the statute (Potrero Neuvo Land Co. v. All Persons Claiming, 155 Cal. 371, 101 P. 12; Niles v. Gonzalez, 152 Cal. 90, 92 P. 74); and (2) that such party has not been served with notice of appeal. In this case there is no showing that notice of appeal was not served upon Grady. It is true the notice of appeal is not addressed to him and the record does not contain any proof of service; but for aught that appears *Page 778 
upon the motion, the notice of appeal may have been served upon Grady so that he was duly informed of the fact that an appeal was taken. Leaving wholly on one side, however, all questions as to service of notice of appeal, and assuming that no notice of appeal was served upon Grady, we are all agreed that such service was not necessary in order to bring up for review the questions in controversy between the plaintiff and the defendant life insurance company. In short, we are agreed that upon the record presented to us on this appeal Grady is not an adverse party within the purview of § 7821, supra.
The question whether a party to an action is an adverse party upon an appeal taken by one of the parties to the action from the judgment therein is one which must be determined by the relative interests of the parties as such interests appear upon the face of the record, and not by the position which the parties occupy in the title of the action. In short, it is not a question whether a party is named as plaintiff, defendant or intervenor but whether the interests of the party is such that they will be adversely affected if the appellant should prevail on the appeal. The meaning of the term "adverse party" under a statute somewhat similar to § 7821, supra, was considered by the court of Chancery of the state of New York in Thompson v. Ellsworth, 1 Barb. Ch. 627, and the court there held that "the adverse party . . . means the party whose interest in relation to the subject of the appeal is in conflict with the reversal of the order or decree appealed from or to the modification sought for by the appeal." This construction or definition of the term "adverse party" in statutes relating to appeals has been approved by the courts of last resort of California, Idaho, Oregon, Wyoming and Montana in construing provisions of the Code of Civil Procedure of those states, quite similar to § 7821, supra. See Senter v. De Bernal,38 Cal. 637; Williams v. Santa Clara Min. Asso. 66 Cal. 193, 5 P. 85; Mannix v. Tryon, 152 Cal. 31, 91 P. 983; Alliance Trust Co. v. O'Brien, 32 Or. 333, 50 P. 801, 51 P. 640; First Nat. Bank v. Halliday, 98 Or. 649, 193 P. 1029; Templeton v. Morrison, 66 Or. 493, 131 P. 319, 135 P. 95; Wright v. Spencer, 38 Idaho, 447, 221 P. 846; Nelson Bennett Co. v. Twin Falls Land Water Co. 13 Idaho, 767, 92 P. 980, 13 Ann. Cas. 172; Lind v. Lambert, 40 Idaho, 569, 236 P. 121; Wyoming Hereford Ranch v. Hammond Packing Co. 31 Wyo. 31, 222 P. 1027; T.C. *Page 779 
Power Bro. v. Murphy, 26 Mont. 387, 68 P. 411; Re McGovern,77 Mont. 182, 250 P. 812.
In Mannix v. Tryon, 152 Cal. 31, 91 P. 983, supra, the court said:
"Persons whose interest in the subject-matter is determined by the judgment appealed from, and which interest will be injuriously affected by its reversal, are adverse parties within the meaning of § 940 of the Code of Civil Procedure upon whom notice of appeal must be served. It is said `an adverse party to an appeal means the party whose interest in relation to the subject of the appeal is in conflict with a reversal of the order or the decree appealed from, or the modification sought by the appeal.'"
In Wyoming Hereford Ranch v. Hammond Packing Co. 31 Wyo. 31, 222 P. 1027, supra, the Supreme Court of Wyoming held that an adverse party is one whose interest in a judgment appealed from is in conflict with the modification or reversal sought or who is interested in sustaining the judgment.
In Nelson Bennett Co. v. Twin Falls Land Water Co. 13 Idaho, 767, 92 P. 980, 13 Ann. Cas. 172, supra, and Lind v. Lambert, 40 Idaho, 569, 236 P. 121, supra, the Idaho court held that all adverse party within the purview of a statute similar to § 7821, supra, is "any party who would be prejudicially affected by a modification or reversal of the judgment appealed from;" and in these decisions the Idaho court pointed out that when in former decisions the court had said that an adverse party was one who would be "affected" by a reversal of the judgment it meant "adversely affected." This is also the view taken by the Supreme Court of Montana in Re McGovern, 77 Mont. 182, 250 P. 812, supra. The decisions of the California, Oregon, Idaho, Montana and Wyoming courts are directly in harmony with, and authority for, the views expressed by this court in Powell v. International Harvester Co. 41 N.D. 220, 170 N.W. 559, wherein this court said:
"Of course, a court cannot determine the rights of a party not before it; and, hence, an appellate court has no jurisdiction to reverse or modify the judgment in such manner as shall affect the rights of the parties on whom notice of appeal has not been served, as such rights have been ascertained and finally determined by the judgment. But the lack of jurisdiction does not exist where such reversal or modification cannot *Page 780 
affect the legal rights of the parties not served with notice. Williams v. Santa Clara Min. Asso. 66 Cal. 193, 194, 5 P. 86. It by no means follows that every person named in the title of an action as a party plaintiff is an adverse party on an appeal taken by the defendant from a judgment rendered in such action; or that every person named as a party defendant is an adverse party on an appeal taken by the plaintiff. An `adverse party,' within the meaning of the statute relating to service of notice of appeal is one whose interest in the judgment or order appealed from is in conflict with the modification or reversal sought by the appellant."
There is no claim by the respondent insurance company that the interests of the intervenor Grady is in conflict with the modification or reversal sought by the appellant here. It is clear that Grady cannot possibly be adversely affected by the appeal. The plaintiff and Grady are not adverse parties, but their interests are the same and run along parallel lines. We are agreed that upon the record presented to us on this appeal Grady is not an adverse party under § 7821, supra. The motion to dismiss the appeal is therefore denied.
The first question which presents itself in determining the appeal on its merits is whether the contract of May 23, 1913 was merged in the contract of May 23, 1923, and the latter contract in turn merged in the contract of June 4, 1924, so that from and after the execution of that contract it alone fixes the rights and obligations of the parties. A careful consideration of this question leads us to the conclusion that the contract of May 23, 1913, was not merged in either of the two later contracts. It is undisputed that at the time the contract of May 23, 1923, was executed the contract of May 23, 1913, had been completed. All obligations of the plaintiff under that contract had been performed and certain definite rights had become vested in his favor and against the defendant insurance company. The second contract, as well as the first, was made upon a blank prepared and furnished by the defendant insurance company, and, hence, under well settled principles the resulting contracts must be construed most strongly against the company. The only provisions in the contract of May 23, 1923 which make any reference to a former contract or contracts or rights and obligations existing thereunder are the provisions which have already been set forth. These provisions relate merely to a small number of policies upon *Page 781 
which the plaintiff was entitled to renewal commissions under the first contract. The great bulk of policies written under that contract remained wholly unaffected by the second contract. But even the provisions in the second contract which provide for the payment of a renewal commission different from that stipulated in the first contract, do not purport to abrogate the former contract. They merely provide that during continuation of the relations between the parties as fixed by the new contract the plaintiff shall be paid a different and somewhat larger renewal commission upon some of the business which was written under the former contract. There is not one word in that contract however, from which it can be reasonably inferred that the plaintiff agreed to stake and pledge as it were under the second contract all renewal commissions coming to him under the first contract. The provisions in the second contract relating to renewal rights, instead of evidencing an intention that the second contract shall supersede the former one in all particulars, is rather to the contrary. It specifies merely that in the future the plaintiff shall be paid certain renewal commissions upon certain specified policies written under the former contract. To that extent, and to that extent alone, it changes the rights and obligations of the parties as fixed by the first contract, that is, it entitles plaintiff as long as the second contract is in force, to the added commissions provided for. It is undisputed that the plaintiff had earned and was entitled to commissions upon renewal premiums in a large amount under the first contract at the time the second was made. It would indeed require plain and specific language to justify an interpretation of the contracts to the effect that the plaintiff agreed that in the event of a termination of the second contract by the insurance company that his right to renewal commissions under the first contract should become forfeited.
We are wholly agreed that the first contract was not merged in the second contract and that the rights and obligations of the parties as fixed by the first contract remain wholly unaffected by whether the second contract was or was not terminated and the rights of the plaintiff thereunder forfeited.
The third contract, that is, the contract of June 4, 1924, does not purport to affect the rights and obligations arising out of the contract of May 23, 1913. It will be noted that in the beginning of that contract *Page 782 
specific reference is made to the contract of May 23, 1923. No reference whatsoever is made to the former contract except insofar as reference is made to the commissions to be paid on the policies written under such contract which are mentioned in the contract of May 23, 1923. In short, the agreement of June 4, 1924, merely purports to provide for an adjustment of the rights of the parties as those rights were fixed by the contract of May 23, 1923.
The second contract, however, was clearly merged in the third contract, that is, the contract of May 23, 1923, was merged in the contract of June 4, 1924, and the rights and obligations of the parties under the second contract are controlled by the provisions of the third contract. We are not concerned with whether the defendant insurance company was or was not justified in terminating the second contract or whether the plaintiff had committed such acts as would forfeit his right to renewal commissions for business written under the second contract. It is undisputed that there was some disagreement between the parties and that their differences were adjusted by the contract of June 4, 1924. That contract, therefore, governs. The question therefore presents itself whether the plaintiff was guilty of such conduct as to forfeit his right to commissions upon renewal premiums as stipulated in the contract of June 4, 1924. In short, the question presents itself whether the plaintiff "in any manner interfered with the defendant insurance company's business," in violation of the provisions of the contract of June 4, 1924, and as a result forfeited all right to commissions on renewal premiums under that contract. On this question the members of the court are not agreed. The writer is of the opinion that the conduct of the plaintiff was not such as to constitute a violation of his contract. It is undisputed that the contract was prepared by the insurance company; it is also undisputed that there was no intention on the part of the parties that the plaintiff should be precluded from engaging in the life insurance business in North Dakota. On the contrary it was expected that plaintiff would engage in such business and as a result enter into competition with the defendant insurance company for business. It is true the evidence shows that the plaintiff at least indirectly sought to induce agents of the defendant insurance company to become identified with the Reliance Life Insurance Company and that he presented to them statements tending to *Page 783 
show that both agents and policyholders would be benefited by having contracts with the Reliance Life Insurance Company rather than with the Union Central Life Insurance Company. But, as said, it was expected that he would compete with the defendant insurance company for business and it would only be natural to assume that in seeking business he would endeavor to show that it would be to the advantage of the persons whom he solicited to contract with the company he was then representing. Furthermore, there is no showing that a single sub-agent of the defendant insurance company severed relations with it and became an agent for the Reliance Life Insurance Company or that a single policyholder either cancelled existing insurance in the defendant insurance company or refrained from taking new insurance in that company because of anything that was said or done by the plaintiff. It seems to the writer that the provision in the contract of June 4, 1924 that if Colwell "in any manner interferes with the company's business" any and "all future interest herein described shall cease," should be construed as having reference to the particular business concerning which the parties were contracting. Under the arrangement made between them on June 4, 1924, Colwell ceased to have any control over the business covered by that contract although he still had an interest therein. If the provision is construed as applicable to all situations, it would be practically tantamount to saying that Colwell should not engage in the life insurance business at all; and yet it is undisputed that there was no such intention, but that on the contrary it was contemplated by the parties that Colwell would again engage in the life insurance business as a representative of some other company. A majority of the court, however, are of the opinion that the clause in the contract covers the transactions and the conduct of Colwell heretofore alluded to and that his conduct in writing letters and sending circulars to the agents and policyholders of the defendant company constituted an interference with its business; that consequently the plaintiff forfeited all right to recover under the contract of June 4, 1924, and that the only rights he has under that contract are, as found by the trial court, those afforded him under the letter of the company of November 29, 1924. In short, a majority of the court are of the opinion that the plaintiff has forfeited all right to recover commissions upon renewal premiums under the contracts of May *Page 784 
23, 1923, and June 4, 1924, and such will be and is the judgment of this court. But, as said, we are all agreed that the plaintiff is entitled to recover from the defendant insurance company commissions upon renewal premiums which may be collected by it upon policies written under the first contract, that is, under the contract of May 23, 1913, and that as regards such commissions the rights of the plaintiff and the obligations of the defendant insurance company are controlled solely by the provisions of the contract of May 23, 1913.
It follows therefore that the judgment appealed from must be and it is reversed and the cause is remanded for further proceedings not inconsistent with this proceeding.
BURKE, Ch. J., and BIRDZELL, NUESSLE, and BURR, JJ., concur.