[Civ. No. 4939. First Appellate District, Division Two.—October 25, 1924.]

# UNITED IRON WORKS, Appellant, v. STANDARD BRASS CASTING COMPANY, Respondent.

[1] Contracts — Manufacture of Fittings — Plans and Specifications—Construction—Sale.—Where a contract for the manufacture of certain lead fittings fixes the price to be paid on the basis of weight, and provides that the customer is to deliver all the material necessary for making the fittings free of cost to the manufacturer, that all metal and scrap remaining after completion of the job is to be returned to the customer, and that the fittings are to be manufactured on the special order of the customer in accordance with blue-prints and specifications furnished by the latter, such contract is for work and labor, and not one of sale.

[2] Id.—Manufacture of Special Article—Contract for Work and Labor.—A contract to manufacture a special article for a special purpose in accordance with plans furnished by the purchaser is a contract for work and labor, particularly if the article manufactured is not suitable for sale in the general market in the ordinary course of the manufacturer's business and the purchaser furnishes the material.

[3] Id. — Failure to Perform Contract — Warranty — Measure of Damages.—The contract of plaintiff having covered a special order for a special purpose in accordance with plans and specifications furnished by defendant, and out of materials furnished by the latter free of cost to plaintiff, in other words, the contract having been for work and labor, and not one of sale, the implied warranty contained in section 1770 of the Civil Code is inapplicable; and the measure of damages is not for a breach of warranty, but the detriment actually suffered by plaintiff's failure to perform the contract in accordance with its terms.

[4] Id. — Breach of Work and Labor Contract — Measure of Damages—Pleading—Proof.—The measure of damages for the breach of such contract for work and labor is that prescribed by section 3300 of the Civil Code; and it is incumbent upon the customer, if he claim damages for the alleged breach of such contract, to allege and prove the detriment proximately caused by such breach.

[5] Id.—Breach—Damage Suffered—Pleading—Proof.—In this action to recover the contract price for work and labor in manufacturing certain lead fittings for defendant, assuming that the allega-

1. See 23 R. C. L. 1221, 1226, 1228.
4. See 8 Cal. Jur. 820.

tions of defendant's cross-complaint, which were to the effect that the fittings were not manufactured as required by the contract, in that the same contained cracks and were not fit for the purpose of a leaching plant, and in order to make said fittings fit the purpose for which they were manufactured it was necessary to expend, and there was expended, a specified sum of money, were sufficient to admit of proof of the damage suffered by defendant, it was incumbent upon defendant to show that some fault of plaintiff's made it necessary to make the expenditures, not merely that it had paid out a certain sum for repairs to the manufactured article.

[6] Id. — Written Contract — Parol Warranty of Fitness. — The contract having been in writing, and having called for the manufacture by plaintiff of the fittings from materials furnished by defendant and in accordance with plans and specifications also furnished by defendant, and it having specifically provided that all castings not in accord with specifications should be subject to rejection and fixed the place of delivery and inspection at defendant's plant, and there having been no provision therein that the castings were for use in connection with a leaching plant or for any other designated purpose, defendant could not insert into such contract by parol a warranty of fitness for a specific purpose.

[7] Id. — Issues — Finding — Evidence — Judgment — Appeal — New Trial.—In an action to recover the contract price for manufacturing certain lead fittings, and in which the defendant cross-complained for damages for the breach of an alleged warranty in connection with said fittings, where the findings, as made, support the allegations of the cross-complaint if it may be inferred that a special warranty of fitness is pleaded, but to that extent the findings are not supported by the evidence, and where, if no such warranty is pleaded, the findings fail to support the judgment, the appellate court cannot order judgment for plaintiff (appellant), as it would be necessary to make findings to support such a judgment, which the appellate court cannot do, but the case must be returned to the trial court for a new trial.

(1) 27 C. J., p. 235, sec. 243.   (2) 35 Cyc., p. 399.   (3) 17 C. J., p. 859, sec. 173.   (4) 13 C. J., p. 731, sec. 863.   (5) 13 C. J., p. 764, sec. 959; 17 C. J., p. 799, sec. 125.   (6) 22 C. J., p. 1119, sec. 1481.   (7) 4 C. J., p. 1192, sec. 3230.

APPEAL from a judgment of the Superior Court of Alameda County. James G. Quinn, Judge. Reversed.

6.   See 24 R. C. L. 193.

The facts are stated in the opinion of the court.

Robert B. Gaylord for Appellant.

Brownstone & Goodman for Respondent.

NOURSE, J.—Plaintiff instituted this action to recover the sum of $1,260 as the agreed price for casting certain check valves for the defendant according to designs furnished by the defendant and using materials also furnished by the defendant. The answer admitted the allegations of the complaint, and by way of counterclaim and cross-complaint alleged that the plaintiff was indebted to the defendant in the sum of $7,045.80 as damages for the breach of contract to furnish and cast certain lead fittings.

The material allegations of the cross-complaint are: About the 1st of September, 1916, defendant and plaintiff entered into a contract wherein the plaintiff agreed to furnish and cast for the defendant certain lead fittings at the rate of $3.75 per 100 pounds to be used in connection with a leaching plant; that plaintiff cast and delivered to defendant 373,701 pounds of said castings upon which the defendant paid plaintiff in full; that said fittings were not manufactured as required by said contract in that the same contained cracks and would not hold water and were not fit for the purposes of a leaching plant; that in order to make said fittings fit for the purpose for which they were manufactured it was necessary to expend, and there was expended, the sum of $7,045.80, demand for payment of which had been made upon the plaintiff and refused. The cause was heard by the court without a jury upon these pleadings on October 31, 1917, and on January 11, 1922, the court filed its findings of fact in favor of the defendant in substantially the same language as appears in the allegations of the cross-complaint, except that in paragraph 7 thereof it was found that the sum of $4,573.09 was expended instead of the sum claimed by the defendant, and in the same paragraph the words "by defendant" were added after the word "expended," so that the court found that this sum was expended by the defendant, whereas the cross-complaint did not allege by whom the expenditure was made. Upon these findings the trial court rendered judgment in the sum of $3,313.09,

being the difference between the amount found to have been expended and the amount admitted to be due the plaintiff under the original complaint. To this judgment was added interest at the rate of seven per cent per annum from April 9, 1917, the date of the commencement of the action.

Two appeals have been taken by the plaintiff upon the same bill of exceptions. One appeal is from the judgment, the other is from the court's order refusing to vacate the judgment and to enter on the findings a different judgment upon the ground that the findings do not sustain the conclusions of law and the judgment. We are satisfied that the judgment must be reversed on the ground that there was no proof of damage complying with the measure prescribed by law.

The case of respondent was based upon the theory that there was a breach of an implied warranty of fitness of an article manufactured for a particular purpose. In this connection respondent relied upon section 1770 of the Civil Code, which reads: "One who manufactures an article under an order for a particular purpose, warrants by the sale that it is reasonably fit for that purpose." The appellant in reply insists that the code warranty is not applicable here because the contract which is claimed to have been breached is not a contract for the sale of a manufactured article, but is one for work and labor. It will be noted that the code section refers particularly to a sale and provides that the warranty shall attach "by the sale" of the manufactured article. The section is found in title 1 of part 4 of division third of the Civil Code. The subject matter of that title is "Sale," and this subject is covered by sections 1721, the first section of the title, to 1798, inclusive. A sale is defined in section 1721 as "a contract by which, for a pecuniary consideration, called a price, one transfers to another an interest in property." The subject of employment is treated under the heading of "Service" in title 6 of the same part and division of the code (sec. 1965 et seq.).

The distinction between a contract of sale of personal property and one for work and labor in the manufacture of a specified article becomes important in determining whether the particular contract comes within the statute of frauds. The section of the code embodied in the provisions

of the statute of frauds, in so far as it relates to the sale of personal property, is number 1739 and is found in article III of this same title on the subject of sales. This section provides generally when contracts for the sale of personal property must be in writing. In section 1740 it is provided that "an agreement to manufacture a thing, from materials furnished by the manufacturer, or by another person, is not within the provisions of the last section."

[1] In support of the claim that the contract in the instant case was one for work and labor and not one of sale, the appellant points out that the price to be paid was fixed on the basis of the weight of the entire deliveries under the contract, rather than upon the basis of the separate articles furnished; i. e., $3.75 per 100 pounds; that the respondent was to deliver all the material necessary for making the fittings free of cost to the manufacturer; that all metal and scrap remaining after completion of the job was to be returned to the respondent; and that the fittings were to be manufactured on the special order of the respondent in accordance with blue-prints and specifications furnished by the respondent.

Such a contract comes within the line of cases holding that a contract for work and labor rather than a contract of sale was made. Three different rules of law obtain in the interpretation of such contracts. They are referred to by the text-writers as the English, Massachusetts, and New York rules. It is not necessary to enter into a discussion of the extent of these different rules, but it is sufficient to refer to *Flynn* v. *Dougherty*, 91 Cal. 669, 671 [14 L. R. A. 230, 27 Pac. 1080], where the so-called Massachusetts rule was adopted as the rule of interpretation in this state. In that case the court said: "The weight of authority in this state supports the proposition, that where the seller is to furnish materials, and fashion them according to specifications furnished by the purchaser, or according to some model selected, and when, without the special contract entered into by the parties, the thing furnished would never have been put in the particular shape or condition in which it was furnished, then the contract is essentially one for labor." It may be added that where the purchaser furnishes the materials for the manufacture under similar circumstances there is no division of authority, but the accepted rule is that

the contract is one for labor.   The same rule was discussed and approved in *Golden Eagle Milling Co.* v. *Old Homestead Bakery,* 59 Cal. App. 541, 545 [211 Pac. 56], where, however, the court followed the generally recognized exception to this rule that where the contract calls for the manufacture of an article which is one that is manufactured and supplied to the trade generally it will be held to be a sale rather than a contract for work and labor.   Following this exception the appellate court in the cited case held that a contract to buy flour to be manufactured by the sellers from their own materials and on formulas prepared by the sellers and used by them in sales to the general market was an agreement of sale within the statute of frauds and would not come within section 1740 of the Civil Code.

[2]   The weight of authority is that a contract to manufacture a special article for a special purpose in accordance with plans furnished by the purchaser is a contract for work and labor, particularly if the article manufactured is not suitable for sale in the general market in the ordinary course of the manufacturer's business and the purchaser furnishes the materials.   (See *Bancroft* v. *San Francisco Tool Co.,* 120 Cal. 228, 231 [52 Pac. 496]; *Mannix* v. *Tryon,* 152 Cal. 31, 40 [91 Pac. 983]; *Spencer* v. *Cone,* 42 Mass. (1 Met.) 283.)

[3]   Under the foregoing authorities it would seem to follow that if the appellant had been engaged in the business of making lead castings of the particular design covered by this contract for the general market, then the rule of the Golden Eagle Milling Company case might apply, but it appears that such was not the fact, and, further, that this contract covered a special order for a special purpose in accordance with plans and specifications furnished the appellant by the respondent and which, in turn, were received by the respondent from the New Cornelia Copper Company of Ajo, Arizona, with whom the respondent had a contract for the delivery of the castings after their manufacture.   The rule of *Flynn* v. *Dougherty* covers the case and the contract must be held to be one for work and labor and not one of sale.   The implied warranty in section 1770 of the Civil Code is not, therefore, applicable, and the measure of damages is not for a breach of warranty, as urged by respondent, but the detriment actually suffered by appellant's failure to perform the contract in accordance

with its terms. [4] That is to say, the measure of damages is that prescribed in section 3300 of the Civil Code as "the amount which will compensate the party aggrieved for all the detriment proximately caused thereby." It was, therefore, incumbent upon the respondent to allege and prove such detriment. The allegations of the cross-complaint are that the fittings were not manufactured as required by the contract in that the same contained cracks and were not fit for the purpose of a leaching plant, and in order to make said fittings fit for the purpose for which they were manufactured "it was necessary to expend, and there was expended" the sum of $7,000. All this may have been true and still there may have been no breach of contract on appellant's part.

[5] Assuming that these allegations were sufficient to admit of proof of the damages suffered by the respondent, it was incumbent upon it to show that some fault of appellants made it necessary to make the expenditures; not merely that it had paid out a certain sum for repairs to the manufactured articles. Such proof was not made. The respondent was content with the testimony that some time after its cross-complaint was filed it had paid to the Arizona concern two checks covering the claims of the latter for repairs to the fittings. No testimony was offered to show that these claims were reasonable or that the expenditures were necessary to make the fittings conform to the calls of the contract. It was shown that a great number of these fittings contained cracks, and that for that reason they would not hold water, particularly under pressure. But it was not shown that these defects could not have been repaired by the appellant at its own plant if the fittings had been rejected by the respondent at the time and place of delivery. So far as the written contract is concerned the appellant merely obligated itself to make the castings in accordance with the plans and specifications furnished by the respondent from the materials which were also furnished by the respondent, and it was, of course, required to perform this work in a workmanlike manner. It did not, however, warrant that the castings when made in accordance with such plans would be free from leaks or that they would be fit for respondent's purposes. It did authorize the respondent to reject any castings which were defective and obligated itself to repair

such defects, and though it may be true, as the court found, that these defects were not patent on casual inspection, it is admitted that they could have been discovered through water tests made at appellant's plant and that the repairs could then have been made by appellant as it was entitled to do under the contract. It may be, therefore, that castings made in a thoroughly workmanlike manner from the plans and specifications and from the materials furnished by the respondent would contain some defects and would produce leaks, but in the absence of an express agreement that a particular result should follow, that is, that the castings should be leak-proof, the appellant is not liable in damages without allegation and proof of failure to comply with the terms of the express contract.

A similar case arose in *Mannix* v. *Tryon,* 152 Cal. 31, 40 [91 Pac. 983, 987], where the supreme court was considering a contract of a subcontractor which required him to do the plastering according to certain plans and specifications, using certain materials designated in the specifications. It appeared that the subcontractor had performed his work in accordance with the terms of the contract, but that the plastering showed a yellowish tint and other discolorations. In holding that the subcontractor should not be denied recovery upon this ground the court said: "He did not contract for results, but only to do the work in a specified way. If the usual result of white walls and ceilings did not follow, he was not responsible for it, unless there was some default on his part in furnishing the materials called for in the specifications or in doing the work with them." In the instant case there is no allegation that the appellant did not perform its contract in accordance with its terms.

[6] The difficulty arises from the failure of the respondent to allege the true contract between the parties. That contract was in writing and differed in many respects from the one pleaded. The written contract called for the manufacture by appellant of the fittings from materials furnished by respondent and in accordance with plans and specifications also furnished by respondent. It specifically provided that all castings not in accord with specifications should be subject to rejection and fixed the place of delivery and inspection at the appellant's plant. It did not, however, as alleged by respondent, provide that the castings were to be

manufactured for use in connection with a leaching plant or for any other designated purpose. In making this allegation the cross-complainant sought to insert into the contract by parol a warranty of fitness for a specific purpose, and the finding of the trial court rests solely on the existence of such a warranty. It has been held repeatedly that if a written contract ''contains no warranty at all, no warranty can be added by parol; if it contains a warranty of some kind or to some extent, parol evidence will not be admitted to extend, enlarge or modify that which the writing specifies.'' (2 Mechem on Sales, sec. 1254; *German Fruit Co.* v. *Armsby Co.,* 153 Cal. 585, 594 [96 Pac. 319]; *United Iron Works* v. *Outer Harbor Dock & Wharf Co.,* 168 Cal. 81, 85 [141 Pac. 917].)

Thus, though the appellant may have had knowledge that these fittings were to be used in a leaching plant (a fact that was neither alleged nor found), it is apparent that the parties did not contract for that purpose and that the appellant did not warrant that the fittings would be suitable for that purpose. As we have endeavored to point out, the implied warranty under section 1770 of the Civil Code is inapplicable here because that section relates only to a sale of personal property. It was, therefore, incumbent upon the respondent, if relying upon a warranty of any nature, to show that such a warranty was within the contemplation of the parties to the contract. Not only do the writings constituting the contract fail to contain a warranty of fitness, but they distinctly negative the claim that such a warranty was intended. By the agreement of the parties the respondent furnished all the materials and had complete control over the mixture of antimony and lead from which the fittings were to be cast. The respondent expressly reserved the right in accepting the offer of the appellant to reject all defective castings, while the printed rules of the Foundrymen's Association, of which both parties were members, and which admittedly were in the contemplation of both parties when the contract was made, provided that ''All defective castings will be replaced and foundry shall not be responsible for any extra machine work or contingent damages caused by reason of defective castings.''

We first find that the respondent in answer to the appeal from the judgment insists that the transaction was a sale

with an implied warranty under the code. It then urges that the damages for the breach of this warranty should be the amount expended to make the fittings conform to the contract (warranty). But it is then argued that if no warranty exists the measure of damage should be the same. All of this is predicated on a misconception of the written contract. If this contract contained a warranty that the fittings should be suitable for the specific purpose claimed we would have a case such as respondent seeks to allege. But the contract does not, either expressly or by implication, contain such a warranty, and, as we have seen, such a warranty cannot be added by parol. Therefore, the finding that appellant contracted to cast fittings for a leaching plant is wholly unsupported by the evidence, and the finding that it was necessary to expend a certain sum "in order to make said fittings fit for the purpose for which they were manufactured" is beyond the issues of the case. The rights of both parties rest in the written contract, but there is neither allegation nor finding that the terms of the written contract were not observed to the letter by the appellant. Though the respondent might be entitled to damages to the extent of the detriment caused by the defects in the castings, such damages could be recovered only upon allegation and proof that the appellant had failed to perform the contract in accordance with its terms and in a workmanlike manner. In the absence of such an allegation the issue tendered by the respondent was really a false issue in that it sought to hold the appellant for damages for the breach of an obligation which the appellant had not assumed.

[7] For the foregoing reasons the judgment must be reversed. We are urged by the appellant to order the entry of judgment in its favor. The situation presented is a peculiar one. The findings, as made, support the allegations of the cross-complaint if we may infer that a special warranty of fitness was pleaded. To this extent the findings are not supported by the evidence. If no such warranty was pleaded then the findings fail to support the judgment. Thus to order judgment for appellant it would be necessary to make findings to support such a judgment. This, of course, we are unable to do. The cause must, therefore, be returned to the trial court for a new trial. Because of this

we do not feel it necessary to discuss the many assignments of error made by the appellant as it is not likely that they will again occur.

The judgment is reversed.

Langdon, P. J., and Sturtevant, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on November 21, 1924; and a petition by respondent to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on December 22, 1924.

Lennon, J., dissented from the order denying a hearing in the supreme court.