[S. F. No. 12747. Department One.—April 11, 1928.]

LOUISE ASPE et al., Respondents, v. A. O. PIRRELLI, Appellant.

10

J. Hampton Hoge and Enid Childs for Appellant.

George K. Ford for Respondents.

SEAWELL, J.—This case and *Cooney* v. *Pirrelli*, S. F. No. 12274, *ante*, p. 4 [266 Pac. 273], and *Aspe* v. *Pirrelli*, S. F. No. 12274a, *post*, p. 14 [266 Pac. 275], are companion cases as to the cause of and the circumstances attending the accident which, it is claimed, resulted in inflicting injuries upon respondent. The facts are fully set out in the first of said cited cases. One or two important propositions of law arise in the instant case which were not present in the other two cases. In the instant case, as in the said other two cases, negligence was admitted by appellant. The main disputed issues here are whether respondent suffered any injuries at all as the proximate result of the negligence of appellant in operating his said automobile and, if it be found that she did, whether the award of the court, to wit, $2,500, was greatly in excess of any damages actually sustained by her.

We have carefully considered the evidence and feel convinced that the full amount of the award is not, as a matter of law, supported by the evidence. Mrs. Aspe was occupying, with her husband, the back seat of said automobile at the time it was struck from the rear by appellant's car. She was not rendered unconscious by the impact nor was she seemingly unduly disturbed by shock at the time of the accident. She received no cuts, lacerations, bruises, or broken bones. Her testimony is that immediately after the impact she looked around to see if all were safe. She discovered her son, Frank Cooney, lying under the automobile, apparently dead. This shock is stressed as one of the contributing causes of the neurasthenic condition which is made the basis of damages herein. Upon seeing her son prone under the automobile she became greatly excited and bewildered, as she explained herself. Her statement was that her anxiety for his safety so affected her that she was

unable to recollect just what was subsequently done at the scene of the accident. She testified that she was struck upon the back of the head, but she was unable to say what had struck her. No person testified to having seen a contusion or bruise of any kind upon her head, or to having heard her make any complaint. She also testified that, in some manner, two of her front teeth were loosened. Strictly speaking, these are the only physical injuries which she claimed to have sustained. The after effects, as described by respondent, are in the main attributable to shock and fear. It is claimed that, if the collision did not directly cause the physical condition complained of, it hastened and accelerated the diseases and sclerotic conditions that inevitably accompany advancing years. The age of respondent was about fifty-six years. Neither the husband nor any of the persons who were at the scene of the injury were aware that appellant had suffered serious injury or shock until some hours thereafter. No physician attended her and at no time did she require hospital attention. Her sister, who was a professional masseuse, testified that respondent came to her room about 1 o'clock A. M. on August 3 in an hysterical condition. She gave her a course of treatments and attention. Respondent's daughter, who is a trained nurse, accompanied her aunt and mother, who was visiting the former at her eastern home, to California about one year after the accident, and has since remained with her mother. She testified that respondent was in a nervous and hysterical condition that rendered her much less efficient in assisting her husband in conducting his business than formerly. The husband was engaged in the business of piano-mover and operated five trucks in conducting said business. Respondent's wife did the bookkeeping, signed checks, and attended to the three phones installed for the purpose of receiving orders. She put in full hours as his business assistant. After the accident she was easily confused and only able to give part time to the duties which she formerly performed. Her husband finally employed a man to take her place, except that she went to the office on Saturdays to sign checks. Her ailments, as described by her sister, daughter and husband, were manifested by occasional sleepless nights, forgetfulness, extreme nervousness, and fearful-

ness. She was given to making outcrys at night, which was termed by the witness "nightmares."

The physician called by respondent at the trial made an examination of her physical condition a day or two before he testified. He found her heart, lungs, blood-pressure, and abdomen to be normal. The sensations over the body as to heat, cold, and pain were also normal, as were the reflexes. The reaction of her pupils to light was a little sluggish. There was some hardening of the arteries, the beginning of arterio-sclerosis. The urine was carrying a considerable quantity of albumen. It was this physician's opinion that respondent had a chronic nephritis. He also said that in all probability it was caused by the injury received from an assumed blow. The injury referred to is based upon traumatic injury. The effect of said blow could not be determined without some knowledge of its force. The blow, so far as the evidence goes, appears to be a matter of small significance. It was the opinion of said physician, adopting his language, that respondent's "neurasthenia and hysteria were aggravated by the presence of her diseased kidneys and I further believe that these kidneys were diseased at the time she was injured and probably long before." It was his opinion, however, as elsewhere expressed, that the symptoms indicated to him some evidence of traumatic injury and that would tend to aggravate her ailments. The defendant called two physicians in his behalf, who testified at considerable length. They were of the opinion that the accident had nothing whatever to do with respondent's condition. No evidence of trauma was discernible. Their examination of respondent convinced them that the cause of respondent's trouble was hypertension (high blood-pressure) coincident with kidney disease. Her symptoms were attributable to conditions produced by advancing years.

From our examination of the evidence, we conclude that the full amount of the judgment cannot be sustained. The state of both the proof and the pleadings make it impossible for us to order an affirmance conditional upon respondent consenting to accept a reduced sum. The *allegata et probata* are absolutely at variance with each other. The complaint alleges one ground of damage and the evidence is directed to an entirely different ground. For example,

the complaint alleges that respondent sustained physical injuries, to wit, a sprain of the left shoulder and back and concussion of the spine and a severe nervous shock. These allegations are denied by the answer. No evidence whatever was offered to show that she sustained the physical injuries specifically pleaded. As another ground of damage, it was alleged that respondent did the house work, including the cooking for herself and family; that since sustaining said injuries she had been only partially able to perform said service. The above allegations were also denied by the answer. Not one word of evidence was introduced in support of said allegations. Indeed, the evidence adduced was directed solely to the assistance rendered to her husband as an assistant in carrying on his business as a piano-mover. In fact, her time was so completely occupied with her office duties as to repel the inference that she had time for any other duties. ■ The complaint contained no allegation as to the special damage to which the proofs were directed. Ordinarily it will be held that, where a case is tried on a theory not outlined in the pleadings without objection by the adversary, the losing party will not be permitted thereafter to complain. In the instant case, however, the court found that all of the allegations contained in the complaint were true excepting the amount of damage sustained, which, of course, included alleged but unproved household services and excluded special damages to which some evidence was directed, but which were not pleaded in the complaint. There is no finding upon the special damages to which the evidence was directed. The appellant was entitled to special findings upon the issues thus made in order that he might point out the precise errors of the trial court upon motion for a new trial and upon appeal. (*Klein* v. *Milne*, 198 Cal. 71 [243 Pac. 420].

The situation is somewhat anomalous and we see no other alternative but to remand the case to the trial court for a new trial.

The judgment is reversed.

Curtis, J., and Preston, J., concurred.

Hearing in Bank denied.

All the Justices concurred.