[Civ. No. 6740. First Appellate District, Division One.—April 26, 1929.]

UNITED IRON WORKS (a Corporation), Respondent, v. STANDARD BRASS CASTING CO. (a Corporation), Appellant.

Brownstone & Goodman for Appellant.

Robert B. Gaylord for Respondent.

CAMPBELL, J., *pro tem.*—Plaintiff sued to recover the purchase price of certain casting work as to which no dispute exists. By cross-complaint the defendant sought to recover alleged damages for improper performance of the contract. The case has been tried twice. At the first trial judgment went for defendant on its cross-complaint but was reversed by the district court of appeal (*United Iron Works* v. *Standard Brass Casting Co.*, 69 Cal. App. 384 [231 Pac. 567]), a transfer of the case to the supreme court for hearing and decision being denied. On a retrial, submitted on the record of the first trial as contained in the bill of ex-

ceptions on the former appeal with some additional evidence, the judgment went for plaintiff and the defendant was denied any relief under its cross-complaint, and from such judgment defendant has appealed.

The contract which is the basis of the action called for the manufacture by United Iron Works of fittings from materials furnished by Standard Brass Casting Company and in accordance with the specifications also furnished by it. The contract specifically provides that all castings not in accordance with the specifications should be subject to rejection and fixes the place of delivery and inspection at the plant of United Iron Works. Standard Brass Casting Company expressly reserved the right in accepting the offer of United Iron Works to reject all defective castings, while the printed rules of the Foundrymen's Association, of which both parties were members and which admittedly were in the contemplation of both parties when the contract was made, provides: ''All defective castings will be replaced and foundry shall not be responsible for any extra machine work or contingent damages caused by reason of defective castings.'' Even in the absence of proof of appellant's knowledge of this general custom, as a foundryman it was bound to know it. (*Miller* v. *Germain Seed Co.*, 193 Cal. 62, 67 [32 A. L. R. 1215, 222 Pac. 817].)

Respondent urges—and correctly so—that rules of law declared upon appeal, whether correctly or incorrectly stated, are binding at subsequent stages of the case; that except as new evidence of a different character is offered— as distinguished from evidence which is merely cumulative —the application of these rules of law to the evidence before the court is conclusive as to the legal effect of such evidence. (2 Cal. Jur. 944.)

In the opinion on the former appeal the court says: ''We are satisfied that the judgment must be reversed on the ground that there is no proof of damage complying with the measure prescribed by law . . . and though it may be true, as the court found, that these defects were not patent on casual inspection, it is admitted that they could have been discovered through water tests made at appellant's plant and that the repairs could have been made by appellant as he was entitled to do under the contract. . . . The written contract called for the manufacture by appellant ·of the

fittings from materials furnished by respondent and in accordance with plans and specifications also furnished by respondent. It specifically provided that all castings not in accordance with specifications should be subject to rejection and fixed the place of delivery and inspection at the appellant's plant. . . . The respondent expressly reserved the right in accepting the offer of the appellant to reject all defective castings, while the printed rules of the Foundrymen's Association, and which admittedly were in the contemplation of both parties when the contract was made, provided that 'All defective castings will be replaced and foundry shall not be responsible for any extra work or contingent damages caused by reason of defective castings.' ''

Appellant accepted the castings and shipped them directly from the foundry of respondent in Oakland, California, to the New Cordelia Copper Company at Ajo, Arizona, and now claims damages on an amended cross-complaint in which it alleges that the fittings were not manufactured in accordance with the terms of the contract and in a good and workmanlike manner, in that the same contained cracks, sand holes and other imperfections, which defects were latent and caused by improper manufacture and workmanship, and that the reasonable cost of remedying these defects was the sum of $7,045.80. This amended cross-complaint was filed to meet the statement in the opinion on the former appeal: ''The rights of both parties rest in the written contract, but there is neither allegation nor finding that the terms of the written contract were not observed to the letter by the appellant, though the respondent might be entitled to damages to the extent of the determined cost of the defects in the castings, such damages could be recovered only upon allegation and proof that the appellant had failed to perform the contract in accordance with its terms and in a workmanlike manner.''

Appellant asserts that on the first appeal the court held that Standard Brass Casting Company in its cross-complaint did not proceed upon the proper theory, that this was not a case of implied warranty for the fitness of a manufactured article for a certain purpose, but that the contract in suit was a contract for the performance of work and labor; that the court on the first appeal in substance held that Standard Brass Casting Company would be entitled to damages pro-

vided it should both allege and prove that respondent failed to perform the contract in suit in accordance with its terms and in a workmanlike manner. While the court did· say "Though respondent (appellant here) might be entitled to damages to the extent of the determined cost of the defects in the castings, such damages could be recovered only upon allegation and proof that the appellant (respondent here) had failed to perform the contract in accordance with its terms and in a workmanlike manner," the extracts from the former opinion here quoted, as well as the opinion as a whole, must be read in the light of the points which were urged upon the previous appeal. Under two headings the former appellant and present respondent urged that by the language of the written contract between the parties, supplemented by the undisputed custom of the trade in conformity to which the contract was executed, the contract in legal effect provided that in the event of delivery of defective castings the exclusive remedy of the Standard Brass Casting Company was to reject the castings, in which event the United Iron Works was obligated to recast them, and it would seem that the court in the former opinion reached this conclusion, for, in speaking of this particular clause of the contract it says: "It specifically provided that all castings not in accordance with specifications should be subject to rejection and fixed the place of delivery and inspection at the appellant's plant." ▮ The general rule in California may be stated to be that in the absence of an express provision in the contract a party to whom defective goods are delivered has the option either to return them or to retain them and sue for damages. ▮ However, where the contract provides for such a breach, that remedy is exclusive and controls the legal status which otherwise would exist; if the contract provides that the remedy shall be the rejection and return of the defective articles, no right exists upon the part of the purchaser to retain the goods and claim damages. As is said in *Bancroft* v. *San Francisco Tool Co.*, 120 Cal. 228 [52 Pac. 496]: "There is no implied warranty created by section 1770 of the Civil Code as to the fitness of the elevator. We again quote it 'One who manufactures an article, under an order for a particular purpose, warrants by the sale that it is fit for that purpose.' This section is but a restatement of an elementary principle

of law, and does not apply where the manufactured article is furnished under a contract demanding that it be made according to specific plans and specifications." The same rule is announced in *Mannix* v. *Tryon,* 152 Cal. 31 [91 Pac. 983], and in *Roebling Construction Co.* v. *Doe Estate Co.,* 33 Cal. App. 397 [165 Pac. 547].

On the question of fact as to whether United Iron Works performed its contract in a workmanlike manner it may be stated that the court found the fittings were manufactured by plaintiff "in a good and workmanlike manner" and that, although some of the fittings contained defects, "the same were not due to improper manufacture or workmanship of plaintiff." If this finding is supported by the evidence, the judgment must be affirmed regardless of the preceding discussion of points of law. As to the character of the work, George E. Randolph, the superintendent of the United Iron Works, under whose directions the fittings were cast, testified that the work was done in a usual and workmanlike manner; that the men engaged in the work were competent; that the molds were made in the usual manner and tamped in the usual way, and the work was done in the usual way for work of that class; that the Standard Brass Casting Company, or its representatives, inspected the work as it progressed; that some defects appeared in the castings, but that he checked these every morning and evening and all of the defects were repaired as they showed up; that none of the fittings were repaired by the "piening" method and that "piening" was used solely for removing exterior imperfections which did not affect the sufficiency of the castings. There was also testimony that the molders were competent men; that they prepared the molds in the proper manner; that all of the molders were experienced and the molds were removed promptly and properly. The witness F. Morrill, the foreman on the molding job, testified that he superintended the labor and that the cracks were not caused by poor labor; that if cracks were caused they were caused by something else; that the workmen on the job were skilled workmen and used their best efforts and the work was carefully done and in a workmanlike manner.

The foregoing testimony sufficiently supports the finding that the fittings were made in a good and workmanlike manner, and that the defects contained in some of them were

not due to improper manufacture or workmanship, and the judgment, therefore, should be and it is affirmed.

Tyler, P. J., and Cashin, J., concurred.