[Civ. No. 2425.   Fourth Appellate District.—January 31, 1940.]

GIOVANNI MONACI, Respondent, v. Mrs. L. A. TURNER, Appellant.

Charles D. Swanner for Appellant.

J. Edward Keating, Harold H. Krowech and Theodore E. Bowen for Respondent.

MARKS, J.—This is an action to recover damages for breach of contract to manufacture and deliver a wine filter.

Plaintiff is the owner of the Garvey Winery located in Rosemead, California. He is engaged in the business of manufacturing and selling wines. During the process of manufacture it is necessary to filter the wines by running them under pressure, through a mechanical appliance called a wine filter.

Defendant Mrs. L. A. Turner, also known as Mrs. M. A. Turner, is the owner of the Santa Ana Iron Works located in Santa Ana, California. She testified that through the iron works she was engaged in the work of making ''machine shop and foundry accessories, repair parts and so forth''. It is admitted that prior to the instant case she had never attempted to manufacture a wine filter.

During the latter part of 1936 defendant employed one Truilizi, who had formerly manufactured and sold wine

filters, to solicit business for her. He contacted plaintiff and on or about December 18, 1936, secured an order for the manufacture of a wine filter. A filter was manufactured by defendant for plaintiff and was delivered on March 9, 1937. Plaintiff tried for a week to operate it and it failed to filter and remove the impurities from the wine. Plaintiff then bought another filter of standard manufacture. and, after negotiations pointing to a settlement of the differences between the parties had failed, brought this action to recover payments he had made on the purchase price of the filter, and damages suffered as a result of breach of contract, and of the implied warranty of fitness for use.

The complaint alleges the contract, one of the terms of which was that the filter was to be delivered in two weeks; that the price of the filter was $875; that $200 in cash and $100 credit for an old filter delivered to defendant had been paid on the purchase price. Special damages were alleged as follows: $328.30, being a loss of five cents a gallon on 6,566 gallons of unfiltered wine sold between January 1 and March 9, 1937; $315 for seven hundred gallons of wine, at forty-five cents a gallon, put through the filter and "made impure and unmarketable"; $56, being one week's salary of Fermo Cuni, wine filterer, in attempting to make the filter work; $7 for electricity used in operating the defective wine filter; $18 worth of filtering aids used during the same operation; $120, the amount plaintiff was compelled to pay in the open market for a workable filter over the .contract price of defendant's filter.

Defendant admitted a contract to build a wine filter similar to the West Coast filter, the payment of $200 in cash on its price and the receipt of the old filter, but denied a credit of more than $50 for that machine. She particularly denied that there was any agreement to deliver the filter within two weeks from December 18, 1936, or within any other specified time. All other material allegations of the complaint were denied. It was also alleged that a maritime strike delayed the delivery of materials necessary for the manufacture of the filter which was the reason for the considerable delay in its delivery. Defendant filed a cross-complaint seeking recovery of the unpaid balance of the contract price of the filter.

On the allegations of the complaint the trial court found as follows:

"That all the facts alleged in the complaint herein are true except the allegations on the amount of damages and as to these allegations the court finds that plaintiff has sustained and is entitled to damages by reason of the premises in the sum of Six Hundred Eighty ($680.00) Dollars."

The trial court also found that none of the allegations of the answer were true, and that all allegations of the cross-complaint were untrue, except the allegations that plaintiff was conducting a wine business under the fictitious name of Garvey Winery at Rosemead, California, and that defendant was conducting business under the fictitious name of Santa Ana Iron Works at Santa Ana, California. There are no other findings of fact.

Plaintiff relies on a contract resting partly in writings and partly in parol evidence. The writings consist of two letters. The first letter merely stated that defendant would manufacture a "wine filter, complete, to be similar in construction to the West Coast Filter with pumps, motors, agitating tank etc., ready for operation", for $775, including the old filter, price to be "net F. O. B. your plant". The second letter more specifically stated the advance payment required, and contained the following description: "The filter proper shall be of copper and all fixtures to be chrome plated. Filtering screens shall total not less than 1152 square inches. West Coast pump shall be used. Motors shall be either U. S. Electrical Mfg. Co., or Sterling Electric Co. All motors shall be semi-enclosed, as set forth by said manufacturers. . . . P. S. Motor to be ball Brg. tipe filter prodoction to produce 750 to 1000 gl. H."

The portions of the contract relied upon by plaintiff, resting in parol, are found in a conversation held between plaintiff and Truilizi who was not available as a witness for either party. Generally speaking, plaintiff testified that defendant, through her employee, agreed to deliver, within thirty days, a filter capable of filtering and cleaning between seven hundred fifty and one thousand gallons of wine per hour.

Defendant first urges that there is no liability on her part, because, the contract was not one for the sale of a filter but one for the special manufacture of a filter accord-

ing to the specifications furnished by plaintiff, she not being engaged in the wine filter manufacturing business which was known to him, and having furnished him a filter similar to the West Coast filter as required by him. (Citing, *Flynn* v. *Dougherty*, 91 Cal. 669 [27 Pac. 1080, 14 L. R. A. 230]; *Bancroft* v. *San Francisco Tool Co.*, 120 Cal. 228 [52 Pac. 496]; *Remsberg* v. *Hackney Mfg. Co.*, 174 Cal. 799 [164 Pac. 792]; *Golden Eagle Milling Co.* v. *Old Homestead Bakery*, 59 Cal. App. 541 [211 Pac. 56]; *Union Iron Works* v. *Standard B. C. Co.*, 69 Cal. App. 384 [231 Pac. 567]; *Merchants' Finance Co.* v. *Acosta Bros.*, 82 Cal. App. 431 [255 Pac. 772]; *Thompson* v. *Fifth & Hill Bldg. Co.*, 110 Cal. App. 317 [294 Pac. 60].)

Without narrating the evidence in detail, it should be sufficient to say that, though not entirely clear and satisfactory, it is probably sufficient to support plaintiff's theory that the contract was for the manufacture and sale of a complete wine filter and not one for the special manufacture of a filter according to submitted specifications. That the filter as delivered would not filter and clean wine must be admitted.

Defendant urges that the findings are not supported by the evidence and do not support the judgment.

That the findings are conflicting cannot be questioned. By finding that all of the allegations of the complaint were true, except as to the items of damage, the trial court found that there was a contract for the manufacture and sale of the filter. By finding that all of the allegations of the answer were untrue, except the two already mentioned, the trial court found that there was no contract to manufacture the filter.

The trial court found that the filter was to be delivered within two weeks. This is contrary to all of the evidence on this question. Plaintiff testified that the filter was to be delivered in thirty days or on about January 17, 1937.

There is no evidence to support the allegations of special damages of $7 for electricity used or for $18 for filter aids used in trying to operate the filter.

The evidence shows that Fermo Cuni was not paid $56 a week as alleged, but $150 per month. If he spent the entire week attempting to operate the filter, and did nothing else, plaintiff's damage from that source would have been about $34.

There is no evidence supporting the allegation of loss of $315 for wine spoiled in attempting to operate the filter. The evidence shows that between two hundred fifty and three hundred gallons of unfiltered wine were thus lost. There is no evidence of the market value of this wine.

There is no satisfactory evidence in the record supporting the allegation of a loss of $328.30 due to the failure to deliver the filter on time, within two weeks, according to the allegations of the complaint and findings of the trial court, and within thirty days according to the undisputed testimony of plaintiff. The evidence on this question may be summarized as follows: That during the months of January, February, and up to March 9, 1937, plaintiff sold 6500 gallons of unfiltered wine; that it was sold for "five cents less than before" and that after the wine was filtered in March it sold for five cents more per gallon than the unfiltered wine. We presume that this should be construed as a statement that the unfiltered wine sold for five cents a gallon less than it would have sold for had it been filtered. The evidence shows that there would have been a substantial expense to plaintiff in the filtering operation, how much does not appear. Plaintiff's damage from this cause could not exceed the reduction in the market value of the wine due to its not being filtered, less the cost of the filtering operation. Further, the unfiltered wine was sold during the entire month of January, the first seventeen days of which (according to plaintiff's testimony) defendant was not in default in her contract. She caused him no loss or damage for the unfiltered wine sold during those seventeen days. There is nothing to indicate the amount of unfiltered wine sold during that time.

There is no satisfactory evidence supporting the allegation that plaintiff was damaged in the sum of $120 by being compelled to go into the open market and purchase a filter at a price greater than he had agreed to pay defendant. True he promised to pay defendant $875 and paid $995 for the West Coast filter and the difference is $120. But there is nothing to indicate that the West Coast filter was not a larger, better and more expensive filter than the one defendant had promised to manufacture and deliver. Plaintiff would have had no lawful complaint had defendant's filter cleaned seven hundred fifty gallons of wine an hour. There is evidence showing that the West Coast

filter easily cleaned eighteen hundred gallons of wine in two hours. ■ Plaintiff can only recover the differences in the contract price of the filter defendant agreed to make and the market value of one of the same general type and capacity. There is no evidence on the question of the similarity and market values of the filter defendant agreed to make and deliver and the West Coast filter purchased by plaintiff.

■ Defendant urges that as each item of damage alleged in the complaint was denied in the answer, an issue was made on each item of damage on which she was entitled to a specific finding. A similar situation was decided in *James* v. *Haley,* 212 Cal. 142 [297 Pac. 920], where the Supreme Court said:

"Each allegation as to damage was specifically denied by defendant, so that an issue was formed in reference to each of these allegations. . . . It is also clear, however, that when a plaintiff pleads special damage, which is denied by defendant, and offers evidence to support it, that issue becomes a material one on which the losing party is entitled to a finding. Here the findings are entirely silent as to each and every issue raised in reference to damage. Ever since the adoption of the codes, it has been the rule that findings are required on all material issues raised by the pleadings and evidence, unless they are waived, and if the court renders judgment without making findings on all material issues, the case must be reversed. (24 Cal. Jur., p. 935, sec. 183, and p. 940, sec. 186.)" (See, also, *Klein* v. *Milne,* 198 Cal. 71 [243 Pac. 420]; *Aspe* v. *Pirrelli,* 204 Cal. 9 [266 Pac. 276]; *Miller & Lux Inc.* v. *Tulare Lake Basin Water Storage Dist.,* 219 Cal. 41 [25 Pac. (2d) 451]; *Scoville* v. *Keglor,* 27 Cal. App. (2d) 17, at p. 30 [80 Pac. (2d) 162].)

We are well aware that there are cases holding that where separate items of damage are alleged and denied, and the trial court finds and awards damages in a lump sum, the judgment will not be reversed unless prejudice to the losing party appears because of the failure to find on the specific items of damage. From what we have already said, we believe that because of failure to find on the allegations of special damage, prejudice to defendant sufficiently appears. Further, after diligent trial we have failed to find

any combination of items of proven damages that will make a total sum approaching the $680 awarded plaintiff by the trial court.

Judgment reversed. The appeal from the order denying the new trial is dismissed.

Barnard, P. J., and Griffin, J., concurred.