[Civ. No. 17098.   First Dist., Div. One.   Mar. 19, 1957.]

FRANCIS J. SPERISEN, Respondent, v. JOHN HEYNE-MANN, Appellant.

Rhein, Dienstag & Levin, Edward Levin and Jay Jackson for Appellant.

Peart, Baraty & Hassard and Robert D. Huber for Respondent.

PETERS, P. J.—This action was brought by the bailor of two matched jade bridal lamps against the bailee to recover the damage to one of the lamps that occurred during the bailment. The complaint is in two counts. One alleges that the bailee deviated from the terms of the bailment, and the other alleges that the bailee was negligent. The

prayer is for $3,500, the alleged cost of repairing the damaged lamp. The trial court entered its judgment against defendant for the full $3,500. The findings are based entirely on the cause of action alleging deviation from the terms of the bailment. There was neither evidence nor a finding on the negligence cause of action. Defendant appeals.

The general facts are as follows: A Mr. Koo admittedly owned, and still owns, the two matched jade lamps, valued at $6,500. Defendant informed the plaintiff that he had a potential customer for the lamps in Dallas, Texas. Plaintiff told Koo of this possibility and he, being agreeable to a sale, delivered the lamps to the plaintiff. Plaintiff then, in turn, delivered the lamps to defendant on August 5, 1952. Before delivery, a microscopic examination of the lamps was made, and all agree that the lamps were then in perfect condition. The lamps were not sold and were delivered back to plaintiff on February 13, 1953. At that time even a visual examination disclosed that a part of one of the lamps, called a "fence" had been broken. Plaintiff, as bailor, considered himself responsible to Koo, the owner. He thereupon brought this action against defendant. This he had a legal right to do.

■ A bailor need not be the owner of the bailed property. He may maintain an action against third persons based on a possessory interest if that interest is good as against all but the true owner. (See generally 6 Am.Jur. p. 232, § 77.) Defendant does not challenge plaintiff's right to maintain the action.

The "deviation" cause of action alleges that the lamps were delivered to defendant "for the sole purpose and on the express oral agreement of defendant that the lamps were to be exhibited by him to a client of the defendant's in Dallas, Texas, as a possible purchaser." In violation of this agreement, it is alleged, defendant took the lamps to Los Angeles for exhibition and sale at retail, and, while the lamps were in the possession of defendant, one of the lamps was damaged.

The findings are in general accord with this portion of the pleadings. The court found in accordance with the uncontradicted evidence that the lamps were valued at in excess of $6,500, and then found the terms of the bailment as pleaded by plaintiff. The court then found that "defendant instead of exhibiting said lamps to his client in Dallas, Texas, took the said lamps to Los Angeles, California, for exhibition and to be sold at retail contrary to the agreement between plaintiff and defendant. . . ." The court then found

that while in the possession and control of defendant ''one lamp was broken and damaged and that the reasonable cost of repairing said lamp is the sum of $3,500.00.''

There is no question raised as to the law applicable to these facts. Defendant does not challenge the authorities cited by plaintiff for the proposition that any deviation from the terms of the bailment renders the bailee absolutely liable for any damage suffered to the goods while in his possession. In support of this rule plaintiff cites Civil Code, sections 1836 and 1930; *Constantian* v. *Mercedes-Benz Co.*, 5 Cal.2d 631 [55 P.2d 841] ; *Hollywood M. P. Equipment Co.* v. *Furer*, 16 Cal.2d 184 [105 P.2d 299].) These authorities generally support the rule for which they are cited, at least by way of dicta. ■ The rule is well settled. Supported by many authorities it is stated as follows in 6 American Jurisprudence page 330, section 225: ''In conformity with this rule, the authorities, generally speaking, support the proposition that in every bailment, whether lucrative or not, the bailor is entitled, and the bailee is bound, to a carrying out of the purpose of the bailment within the terms expressly or impliedly agreed upon by the parties, and a bailee who departs from such terms is liable to the bailor for any loss or damage in respect of the thing bailed which occurs as a result thereof, irrespective of any want of due care on his part, in the absence, of course, of any ratification on the part of the bailor ; or, as otherwise stated, if a bailee elects to deal with the property entrusted to him in a way not authorized by the bailor, he takes upon himself the risk of so doing, except where the risk is independent of his acts and inherent in the property itself.''

As already stated, defendant does not challenge this rule of law.

■ Defendant's first contention is that the finding that he deviated from the terms of the bailment is not supported. Although the evidence as to the terms of the bailment is in conflict, there is ample evidence to support the finding of the court on this issue. At the time the lamps were delivered to defendant on August 5, 1952, there were five people present—defendant, Mr. Koo, plaintiff, and his wife and son.

The son testified that plaintiff told defendant that ''These lamps should be shown to your client in Dallas, Texas,'' and that ''These lamps are to be restricted to a private showing to your client in Dallas, Texas,'' and defendant replied ''Yes, I understand this.'' Plaintiff's wife testified that plain-

tiff told defendant "that the lamps were to be shown to his customer in Dallas, Texas," and defendant replied "that is what he would do, and that alone." This testimony alone supports the finding as to the terms of the bailment.

Mr. Koo was positive that he had stated that he did not want the lamps shown in public, and he was quite clear that plaintiff had told him that defendant wanted the lamps to show to a private purchaser in Texas. Plaintiff testified that, because of Mr. Koo's restrictions, the lamps were "to be shown privately and they were not to be placed on display"; that they were to be shown only to a private collector "and not to the trade." He stated that by private collector he meant a private individual, and not firms like Gump's, V. C. Morris and Company, Nathan Benz or other retail dealers. He first testified that defendant was not to be limited as to the persons to whom the lamps could be displayed, but after thinking about the matter over night he said that by "exhibited privately" he meant exhibited to the Texas customer that defendant had mentioned.

Defendant's testimony was not clear. He admitted that the only prospective customer he discussed with plaintiff was the man in Texas, and he also admitted that he did not disclose to plaintiff that in fact he did not know personally the man in Texas but expected to make such a contact through a Los Angeles dealer. He first testified that plaintiff told him that he could display the lamps "only for your client in Dallas, Texas," but shortly thereafter testified that plaintiff said "I should show the lamps only in privacy, not in public. I understand he means not go and peddle them around to the retail stores with the lamps and putting them on display for the open public." A little later he testified: "I couldn't recall correctly the conversation. Maybe I misunderstood him or maybe—I was only talking to Mr. Sperisen about one customer," that is, about his Dallas buyer.

From this summary it is quite apparent that the findings that the express terms of the bailment were that the lamps were delivered to defendant for the sole purpose of displaying them to a prospective client in Dallas, Texas, is amply supported.

■ The next question is whether there was any deviation from the terms of this bailment, as found by the trial court. This, of course, depends upon what defendant did with the lamps.

Defendant neither took the lamps to Dallas, nor did he

display them to any customer from there. He testified that when the lamps were delivered to him on August 5, 1952, he took them to his home where they remained for about 14 days; that then he took them to Los Angeles and placed them in the jade vault at Elizabeth McPherson's, where they remained for between 10 to 14 days; that he then brought them back to his home in San Francisco; that sometime thereafter he put them in his automobile and started to drive to New York, but turned back because of illness after he got to Nevada; that the lamps were never unpacked following this trip and did not leave his house until they were returned to plaintiff.

This testimony was impeached in several important respects. According to Elizabeth McPherson the lamps were in her place of business for nearly a month, that is, from August 28, 1952, to September 22, 1952. There was also introduced a telegram dated November 4, 1952, sent by defendant to Elizabeth McPherson which reads: "Received jade bridal lamps back from New York today." Defendant's explanation of this telegram was that sometime before it was sent, the partner of Elizabeth McPherson had telephoned him from Los Angeles, urging him to bring the lamps back to Los Angeles because he, the partner, had "another" customer for them, and, because defendant did not want to make another trip to Los Angeles right then, he told the partner that the lamps were in New York and that he would telegraph him when the lamps were returned. Actually, he testified, the lamps were at his home.

It also appears in the record that Elizabeth McPherson is an interior decorator, operating a two-story establishment in Los Angeles. On the second floor is located the display case where the lamps were kept while in her establishment. Defendant described this depository as a special vault containing glass cases and that an iron gate bars entry into the vault. This vault or room is not open to the general public, but is opened for the "very fine buyers" of the establishment. There are many valuable and rare articles on display in this vault.

Defendant also testified that he had personally unpacked the lamps and placed them in a case in the vault, and then personally repacked them when he brought them back to San Francisco. As far as he knew, the lamps were not shown to anyone while they were in the vault. Elizabeth McPherson agreed that no one but defendant handled the lamps while

they were in her store, but she said nothing in her statement about whether or not they were displayed to the public. She described the purpose of the deposit of the lamps in her store as follows: "[Defendant] brought in 2 jade wedding lamps whom he mentioned as belonging to a friend and asked me if I would be willing to buy them or display them in my store. . . . Mr. Heynemann stated he wanted $14,000.00 for the lamps." This is contrary to defendant's statement that he placed the lamps with Elizabeth McPherson for the sole purpose of trying to sell them to a Texas customer who was a client of the interior decorator and not a client of defendant. Defendant also admitted that he never told Koo or the plaintiff that he intended to transport the lamps to New York, and he also admitted trying to sell them to various buyers, but claims that he did so only by letter or photograph.

Thus, while the evidence does not show that the lamps were placed on general public display, they were certainly used in violation of the terms of the bailment. They were never displayed to the customer from Texas, which was the sole purpose of the bailment. The taking of them on the automobile trip that started for New York was a clear deviation from the terms of the bailment. In other respects, as shown by the evidence, the terms of the bailment were violated. Thus, the findings as to the terms of the bailment and deviation from the terms of the bailment find ample support in the record.

We now come to the question of damages. This presents a more difficult question. The trial court found that "while said lamps were in the possession of and under the control of said defendant one lamp was broken and damaged and that the reasonable cost of repairing said lamp is the sum of $3,500.00." This is in exact accord with the allegations of the complaint. There is no evidence to support the finding of $3,500 damage. Plaintiff testified that, in his opinion, it would cost "about" $3,250 to repair the lamp; that he estimated it would take 1,000 hours of labor at $3.00 an hour, and that there would be a $250 material cost. Mr. Koo's estimates ranged from $800, if the repairs could be made in Communist China, to from $1,700 to $2,160, plus a materials cost of $250. Defendant's expert estimated the cost of repair at about $400.

Plaintiff, in an effort to support the finding, refers to some evidence to the effect that it would be most difficult to find a piece of jade that would exactly match the jade of the other lamp; that part of the value of the lamps was that they

were a perfect match; that if matching jade could not be found it would be necessary to carve two new fences. Clearly, this was an item of special damage that was neither pleaded nor found by the trial court. This is fatal to the claim. (*Treadwell* v. *Whittier*, 80 Cal. 574 [22 P. 266, 13 Am.St.Rep. 175, 5 L.R.A. 498].) Even if the trial court could have considered this item, the fact is that it did not, because its finding is that the damage to one of the lamps amounted to $3,500. If special damages were to be awarded, a special finding on that issue was essential. (*Klein* v. *Milne*, 198 Cal. 71 [243 P. 420]; *Aspe* v. *Pirrelli*, 204 Cal. 9 [266 P. 276]; *James* v. *Haley*, 212 Cal. 142 [297 P. 920].) Thus, the finding as to the amount of damages is totally unsupported.

The last contention of defendant is that he was prejudically damaged because the trial court kept the case under submission for about nine months. The trial occurred in June, 1954. The findings were not filed until March 23, 1955.

Section 632 of the Code of Civil Procedure provides that the trial court's decision must be "filed with the clerk within thirty days after the cause is submitted for decision." This section is directory only, and before a reversal is justified because of its violation prejudice must be shown. (*Farmers etc. Nat. Bank* v. *Peterson*, 5 Cal.2d 601 [55 P.2d 867]; *McQuillan* v. *Donahue*, 49 Cal. 157; *Van Der Most* v. *Workman*, 107 Cal.App.2d 274 [236 P.2d 842]; *City of Los Angeles* v. *Hannon*, 79 CalApp. 669 [251 P. 247]; *Hutchinson Co.* v. *Marshall*, 49 Cal.App. 307 [193 P. 164].) In all of these cases the delay was held to be nonprejudicial. No case has been found where the delay has been held to be prejudicial.

To establish his claimed prejudice defendant calls attention to the fact that the record, as augmented, shows that on March 7, 1955, the trial court entered its judgment in favor of plaintiff for $5,000. This sum exceeded the prayer of the complaint. When apprised of this fact the trial court then entered its judgment for $3,500, the precise amount prayed for in the complaint. Defendant argues that this demonstrates that, because of the long delay, the judge did not have the evidence in mind when he rendered his decision, and that therefore the long delay was necessarily prejudicial. While it is a possible inference that the error in the amount of the judgment was caused by the delay, it is also reasonable to infer that the error was purely clerical. In support of the judgment we must indulge in the latter inference.

There is no need for a retrial of the issue of liability. The findings in that respect are amply supported. The judgment is reversed on the issue of damages alone, with instructions to the trial court to retry that issue and to enter its judgment accordingly. Each side will bear its own costs on this appeal.

Bray, J., and Wood (Fred B.), J., concurred.