FRED E. PRATT, Doing Business as PRATT GRAIN. COMPANY, Respondent, v. E. F. SCHREIBER and C. T. SCHREIBER, Doing Business as SCHREIBER FLOUR & CEREAL COMPANY, Appellants.

In the Kansas City Court of Appeals, March 5, 1923.

1. **CONTRACTS: Non-Performance: Unless Contract Provides Excuse for Non-performance, Inability to Perform is no Defense, Save in Cases Where Performance is Forbidden by Law.** It is well settled that unless a contract provides for something in the way of an excuse or reason for not performing it, the fact that the party to perform is unable to do so is no excuse, save in those cases where performance of contract is, subsequent to execution thereof, forbidden by law.

2. ——: **Oral Contract: Statute of Frauds: Contracts Within Statute of Frauds Can Only be Modified by Agreement in Writing.** Where complete and valid written contracts, concerning the purchase of bran, were in existence, and by reason thereof within the Statute of Frauds, they could be modified only in the manner in which they could be legally made enforceable in the first place, namely, by plaintiff's consent in writing.

3. ——: **Sales: A Contract May be Evidenced by and Made Up of Several Instruments, but Where a Complete and Effectual Written Contract is Signed by Both Parties, the Rule Does Not Apply.** A contract may be evidenced by or contained in and made up of several different instruments, but that is where the only contract in controversy exists by virtue of such instruments, and not where a written confirmation of a contract has been signed by both buyer and seller, constituting a complete and effectual written contract existing independently of and without relation to other collateral writings, which last are signed only by party claiming benefit of modification contained solely in collateral writings, and since seller signed the confirmation of contract, the

Pratt Grain Co. v. Schreiber.

Statute of Frauds was complied with and buyer entitled to sue for breach of contract.

4. ———: Modification: Statute of Frauds: In Proposed Modification of Contract Excusing Performance by Seller in Event of Strike, Held Buyer is Party to be Charged, and to Permit Modification Would Destroy Security Afforded by Written Instruments. As to the claimed feature of the contract excusing performance by seller in the event of strikes, it is the buyer who is the party sought to be charged with regard to it, and to permit a modification of a complete, valid, written contract in this way would be to weaken and destroy the safety and security afforded by written instruments.

5. ———: Sales: Measure of Damages: Where Contract Impliedly Fixed Parties' Place of Business as Place of Delivery, the Damages are to be Determined in Accordance with Difference Between Contract Price and Market Price at Time and Place of Delivery. While contract for sale of merchandise did not explicitly fix or name the place of delivery, it fixed the price on the basis of cost and freight at the place where sellers and buyer did business, and since it nowhere required the sellers to pay any freight from that place, it thereby impliedy fixed that place as place of delivery so that the rule with reference to the measure of damages is that the damages are to be fixed in accordance with the difference between contract price and the market price at time and place of delivery.

6. ———: ———: Damages: Buyer's Directions to Ship to Destination Other Than That Fixed in Contract, do Not Change the Place of Delivery Fixed by Contract so as to Make Market Price at Destination Instead of Price at Place of Delivery, the Proper Measure of Damages. Although buyer's directions were to load cars for shipment to another place, they did not change place of delivery fixed by contract to the destination requested by buyer, so that in arriving at measure of damages the rule with respect thereto would be the market price at that destination instead of price at place of delivery.

7. ———: ———: Delivery: Place of Delivery Presumed to be Where Goods are at Time of Sale. In the absence of any provision for the place of delivery, it is presumed to be where the goods are at the time of sale, which is usually the seller's place of business or shipment.

8. APPEAL AND ERROR: Juror: Challenge: Refusal to Sustain Challenge to Juror, Where Record Did Not Show What Occurred with Respect Thereto, Appellate Court Not in Position to Know Whether Same Was Prejudicial. Appellate court not in a position

to know whether defendants were prejudiced by refusal of trial court to sustain their challenge to a juror where the record did not show whether he was afterward peremptorily challenged, whether defendants exhausted their challenge or whether juror was on the jury that was finally empaneled.

9. JURY: Prejudice: Opinion: Incompetent: Where Juror Believed His Knowledge of a Certain Business Custom Might Influence Him but Stated he Would be Governed by the Law and Not by His Knowledge Thereof, and Could Hear the Evidence Impartially, Held Insufficient to Render Him Incompetent. Where a juror was an employee of the Board of Trade, and because of his knowledge of a custom its members had of settling their differences by arbitration out of court, he thought that might perhaps influence him, but when told that the law governing the parties' rights would be given him by the court and asked which he would follow, the court or the practices of the board of trade, he unhesitatingly and repeatedly said he would follow the court's instructions, and that the fact that the case was not arbitrated would not deter him from hearing the evidence impartially, *held* not sufficient to render him incompetent.

Appeal from the Circuit Court of Jackson County.— *Hon. Thos. B. Buckner,* Judge.

AFFIRMED.

*Humphrey & Boxley, Lee C. Hull* and *Haff, Meservey, German & Michaels* for plaintiff-respondent.

*Joseph F. Keirman* and *Geo. H. English* for appellants.

TRIMBLE, P. J.—Plaintiff's action is to recover damages for breach of contract. At the close of the evidence, the court instructed the jury to find for plaintiff on both counts of his petition, submitting to them, however, the question of the amount of damages. Verdict and judgment was for plaintiff for $2400 on the first count, and $2100 on the second. The defendant has appealed.

It conclusively appears that on March 18, 1920, plaintiff made an oral contract with defendants to purchase

6000 sacks of bran, net weight of 100 pounds per sack, price $2.20 per hundredweight, basis cost and freight Kansas City, shipment during the month of April, 1920. Later in the day this verbal contract was confirmed in writing, signed by both plaintiff and defendants, the confirmation instrument providing, in addition to the terms mentioned above, that: "In the absence of other instructions, bill to us at Kansas City."

On March 22, 1920, a similar verbal contract was made for the further purchase of an additional 6000 sacks of bran at $2.25 per hundredweight, the price being the only difference in terms. And later on that day this was confirmed in writing the same as before and signed by both parties.

These confirmations were written up in duplicate by plaintiff and sent by messenger to defendants, on their respective dates, one of which duplicates was signed by defendants and handed back to the messenger and the other was retained by defendants.

The contracts called for shipments during the month of April, 1920, and on April 10th plaintiff told defendants they "could load those cars for shipment to St. Louis." The bran was never loaded, however, and was never furnished. The foregoing facts are beyond dispute and unquestioned.

Plaintiff introduced evidence tending to show that on the last day of April the market price of bran in Kansas City was $2.60 to $2.65 per hundredweight.

The defendants sought to prove that when the above-mentioned confirmations prepared by plaintiff were brought to them, they, in addition to signing these, prepared duplicate confirmations and signed them and handed them to the messenger along with the confirmations which had been executed by both parties. The confirmations prepared by defendants differed from those prepared by plaintiff in that the former contained a provision that "Above order is subject to strikes . . . and other delays beyond our control." They were never signed, however, by plaintiff, nor, indeed, is there any

showing that they ever came to his notice, though it would not seem to make any particular difference if they had, since the other confirmations of the oral contracts theretofore made were duly executed by defendants and plaintiff.

The defendants also sought to prove that the reason they did not perform their contract was because they were prevented from doing so by the railroad strike then in progress.

The court, however, would not let defendants prove the above matters, since to do so would modify the written contracts executed by both parties, and defendants had nothing binding on plaintiff to show that he had agreed to any such modification. It is well settled that unless a contract provided for something in the way of an excuse or reason for not performing it, the fact that the party to perform is unable to do so is no excuse, save in those cases where performance of the contract is, subsequent to the execution thereof, forbidden by *law*. And, of course, contracts such as those involved herein are not of that character.

The oral contracts were complete when made. Their only defect was that they were within the Statute of Frauds, but when the confirmations signed by plaintiff were also signed by defendants that imperfection disappeared, and complete and valid written contracts concerning the purchase of the bran were in existence. Being contracts in writing and within the Statute of Frauds, they could be modified only in the manner in which they could be legally made enforceable in the first place, namely, by the plaintiff's consent in writing. [Fuller v. Presnell, 233 S. W. 502; Last Chance Mining Co. v. Tuckahoe Mining Co., 202 S. W. 287; Eastern States, etc., Co. v. Teasdale & Co., 211 S. W. 693; Reigart v. Manufacturers Coal, etc., Co, 217 Mo. 142.] However, it is contended that this modification was in writing because it was contained in the duplicates defendants prepared and which they signed and delivered along with the plaintiff's confirmations which were signed by

both parties. There is no doubt but that a contract may be evidenced by, or contained in and made up of, several different instruments. But that is where the only contract in controversy exists by virtue of such instruments, and not where a complete and effectual written contract exists independent of and without relation to the other collateral writings, which last are signed only by the party claiming the benefit of any modification contained solely in the collateral writings. Nor can defendants avoid the rule on the ground that they are the "parties to be charged." They are, so far as the furnishing of the bran is concerned, and the statute is complied with since they signed the confirmations of the contract, for a breach of which plaintiff sues. As to the claimed feature of the contract excusing performance in the event of strikes, it is the *plaintiff* who is the party sought to be charged with regard to it. To permit a modification of a complete, valid, written contract in this way, would be to weaken and destroy the safety and security afforded by written instruments.

It is urged that, in arriving at the measure of damages, the market price at St. Louis and not at Kansas City should have been considered. We think not. The contract, while it does not explicitly fix or name the place of delivery, yet it fixes the price on the *basis* of *cost and freight at Kansas City*. That is, when the cars are loaded and the bills of lading are taken out and delivered to plaintiff and the commodity paid for, then delivery is complete, the title has passed and plaintiff takes all the risks of shipment. Nowhere is there any requirement that defendants shall pay any freight from Kansas City. Defendants' answer states that plaintiff agreed to pay for the bran "upon receipt of bills of lading for same *at Kansas City*." There is no question but that the rule is that damages are to be fixed in accordance with the difference between the contract price and the market price at time and place of delivery. But, although plaintiff's directions were to "load those cars for shipment to St. Louis," this does not mean that

213 M. A.—18

delivery was to be made by defendants in St. Louis, but only that defendants should load the bran on the cars in Kansas City so that plaintiff might ship to St. Louis. When the cars were loaded and the bills of lading delivered to plaintiff at Kansas City the title would pass and the delivery would be complete although, for plaintiff's business purposes, the destination of the cars intended by plaintiff would be St. Louis. The place where goods are to be delivered and where they are to be sent, are two entirely different places. [Vanstone v. Hopkins, 49 Mo. App. 386; 35 Cyc. 638 (c).] Upon the contracts and the answer in this case we think it is clear that the place of delivery was in Kansas City while the destination plaintiff intended to ship the cars was St. Louis. In the absence of any provision for the place of delivery it is presumed to be where the goods are at the time of sale, which is usually the seller's place of business or shipment. Both parties in this case were located in Kansas City and the evidence seems to indicate that the cars were to be loaded, and the shipment so far as plaintiff was concerned, was to originate there. [Specialty Furniture Co. v. Kingsbury, 50 S. W. 1030, 1031; Mobile Fruit, etc., Co. v. McGuire, 83 N. W. 833; Neil v. Cunningham Store Co., 160 Mo. App. 513, 520.] But whether this be true or not, we think the clear meaning of the contract is that the delivery is to be made at Kansas City, and, as stated, the answer confirms this.

It is finally urged that the court erred in not sustaining the defendants' challenge to the Juror, Stanley. The record does not show whether he was peremptorily challenged afterward by defendants nor whether they exhausted their challenges, nor whether Stanley was on the jury that was finally empaneled. We are not, therefore, in a position to know whether defendants have been actually prejudiced or not. [Williamson v. St. Louis Transit Co., 202 Mo. 345, 368.] If defendants' challenges were not exhausted, and they failed to peremptorily challenge the juror complained of, it has been held that such failure constitutes a waiver of the

objection to him. [Morgan v. State, 51 Neb. 672, 686.] Also that even if a party is not obliged to peremptorily challenge a juror where his challenge for cause has been overruled, yet, if he elects to do so, he waives his challenge for cause. [Stewart v. State, 13 Ark. 720; Freeman v. People, 47 Am. Dec. 216.] But aside from this, we think the juror was competent, certainly he did not show himself to be incompetent. He was, and had been, an employee of the Board of Trade, and in his knowledge of a custom its members had of settling their differences by arbitration out of court, he thought that might perhaps influence him some; but when told that the law governing the parties' rights would be given him by the court, and asked which he would follow, the court or the practices of the Board of Trade, he unhesitatingly and repeatedly said he would follow the court; nor would the fact that the case was not arbitrated deter him from hearing the evidence impartially. We see no ground for interfering with the trial court's ruling on the juror's competency. In addition to all this, the verdict on each count was the minimum that could be computed under the evidence, and as to the plaintiff's right to recover, that was directed by the court, since the contract was in writing and the failure to furnish the bran was conceded and the defense interposed was not allowable under the law.

The judgment is affirmed. All concur.