## HOGAN et al. v. BARNETT & CO., Ltd.
### No. 14042.

United States Court of Appeals
Eighth Circuit.
Feb. 23, 1950.

Donald E. Raymond and Leo J. Kelley, Kansas City, Mo., for appellants.

John A. Morrison, Kansas City, Mo. (Morrison, Nugent, Berger, Hecker & Buck, Kansas City, Mo., on the brief), for appellee.

Before SANBORN, THOMAS and JOHNSEN, Circuit Judges.

THOMAS, Circuit Judge.

This is an appeal from a judgment for the plaintiff in an action for damages, tried to the court without a jury, for the alleged breach of two contracts. The case was submitted on a stipulation of facts and depositions.

The plaintiff, appellee, is a foreign corporation, with its principal office at Montreal, Canada. The defendants, appellants, Thomas R. Hogan and Emmet A. Kelley, constitute a partnership and are engaged in the business of purchase and sale of soybeans and soybean oil and soybean meal, both as principals and agents, at Kansas City, Missouri, under the firm name of Kaysee Mills.

In the month of May, 1947, the parties entered into two contracts, each for the sale by defendants to plaintiff of 200 tons of soybean oil meal, F.O.B., Decatur, Illinois, each contract providing: "Shipment June 1947 Sight Draft with Bill of Lading Attached." It was stipulated that performance of the contract required shipment of the soybean oil meal on or before June 30, 1947, and that only one 40-ton carload had been shipped by defendants before that date. The remaining 360 tons were never shipped, although shipping instructions had been timely given.

This action was brought to recover damages for failure to perform the contract. The defense alleged was that plaintiff by two telegrams dated June 25, 1947, and June 26, 1947, respectively, repudiated the contracts; that defendants did everything possible toward the performance of the contracts and that had it not been for plaintiff's two telegrams the contracts would have been performed.

On June 3, 1947, plaintiff sent a telegram to defendants requesting them "to wire car numbers of Soybean Oil meal you have purchased for June shipment." On June 7, 1947, defendants replied: "Upon receipt of car numbers we will wire you same." On June 17, 1947, plaintiff telegraphed to defendants: "Would you do everything possible to ship as many cars of Soyabean Meal on order with you in bulk to Montreal, Que., and oblige?" On June 19, 1947, plaintiff wired asking defendants "to rush Soyabean Meal we have on contract with you * * *" A second telegram was sent by plaintiff to defendants on the 19th referring to the first telegram of that day, saying: "We are badly in need of this Soyabean Meal which is overdue as on our contract." Plaintiff's telegrams of June 17th and 19th were not answered, and on June 25, 1947, plaintiff sent defendants the following telegram:

"Please be advised that we expect you to tender no later than June the thirtieth Four Hundred Tons of Soyabean Meal purchased from your confirmations * * * If You Are Unable to Fill the Above Contracts We Will Buy in the Open Market July the First at the Prevailing Market Price on That Date * * * and Charge You with the Difference * * *"

On June 26, 1947, plaintiff sent the following telegram to defendants: "Reply to Our Wire dated June 25 as we insist upon contract delivery during June."

These telegrams were not answered.

The net price of the 360 tons of soybean oil meal at the contract price was $21,800. On July 1, 1947, the plaintiff purchased 360 tons of soybean oil meal on the open market for which it paid $28,620. The court found for plaintiff and entered judgment against defendants for the difference between the contract price and the cost on July 1, 1947, in the amount of $6,740 with interest.

In the stipulation of facts filed in the trial court defendants admit that if plaintiff's telegrams, supra, of June 25 and 26, 1947, do not relieve them of liability they are liable to plaintiff in the sum of $6,740 and interest. Their contention is that these telegrams repudiated plaintiff's obligations under the contracts and amounted to a breach of the contracts. They contend that

the telegrams demanded *delivery* of the soybean oil meal *at Montreal, Canada,* by June 30, 1947, whereas all defendants were required to do under the contracts was to load the meal on cars and initiate shipment by that date. Plaintiff agrees that proper performance of the contracts required only that defendants institute shipment during the month of June, 1947.

The only question for consideration, therefore, is the meaning of the two telegrams in question. Did the word "tender" in the telegram of June 25th and the words "contract delivery" in the telegram of June 26th mean that the soybean oil meal must be delivered to the plaintiff at Montreal, Canada, on or before June 30, 1947, when considered in connection with the other telegrams set out above; or did they mean only that the contracts must be performed according to their terms on or before that date? We think the telegrams did not repudiate the contracts, and the words referred to did not mean what defendants contend they mean.

 It is true that a tender of performance by the seller of personal property is not necessary "when the contract has been definitely repudiated by the buyer * * * by insisting on delivery at a place other than that named in the contract." 55 C.J., Sales, § 317, page 327; Wester v. Casein Co. of America, 206 N.Y. 506, 100 N.E. 488, Ann.Cas.1914B, 377. And a contract for "shipment" in a specified time ordinarily means that the seller shall start the goods on their journey to the buyer at such time. 55 C.J., Sales, § 332, page 340; Southern Steel & Iron Co. v. Hickman, Williams & Co., C.C.Ala., 190 F. 888.

"In its broad sense, tender is an offer to perform a contract, or to pay money, coupled with a present ability to do the act." 62 C.J., Tender, § 1, page 654; Cockrill v. Kirkpatrick, 9 Mo. 697, 704. In the case of mutual and concurrent promises the word "tender" means only an offer to do the acts which the agreement or contract requires to be done at the time and place agreed upon. 12 Am.Jur., Contracts, § 304, page 891. In the absence of any provision in a contract of sale for the place

of delivery, the place is presumed to be where the goods are at the time of sale. Pratt v. Schreiber, 213 Mo.App. 268, 249 S.W. 449.

Clearly defendants erred in assuming that the word "tender" in the telegram of June 25th meant that plaintiff was demanding delivery of the soybean oil meal at Montreal, Canada. That telegram could rightly be interpreted to mean only what the contract required defendants to do, namely, to "ship" the goods on or before June 30th.

Neither can it be said that the words "contract delivery" used in plaintiff's telegram of June 26th meant that plaintiff was demanding anything more than strict compliance with the terms of the contract.

It is no defense to plaintiff's action that defendants misunderstood the meaning of these telegrams or that, as Kelley testified, they were ready and able to perform. Without answering either telegram or requesting an explanation defendants relied upon their conclusion that the telegrams demanded more than the contracts required and that, therefore, they amounted to a repudiation of the contracts. The defendants were mistaken.

Affirmed.