Roy GOSS (Plaintiff), Respondent,

v.

SUBURBAN MOTORS, Inc. (Defendant), Appellant.

No. 29167.

St. Louis Court of Appeals.

Missouri.

Oct. 18, 1955.

Rehearing Denied Nov. 10, 1955.

Chopin & Boisaubin, George D. Chopin, St. Louis, for appellant.

John D. Hasler, St. Louis, for respondent.

WOLFE, Commissioner.

This is an action by the purchaser of a truck against the seller. The seller contracted at the time of the sale to install a dump body on a truck chassis that the buyer had purchased. The truck was destroyed by a collision before it was delivered to the buyer and the buyer here sues to recover the value of the truck destroyed. The case originated in the magistrate court and was tried on appeal to the court on an agreed statement of facts. There was a judgment in favor of the plaintiff and the defendant prosecutes this appeal.

The agreed statement of facts is as follows:

"1. That on or about November 30, 1951, plaintiff dealt with one Robert Berry, salesman for Surburban Motors, defendant, in negotiating to purchase a used truck from defendant company.

"2. That on or about November 30, 1951, plaintiff agreed to purchase and signed the customary papers to purchase a particular used Ford truck chassis from defendant, and as part of the purchase sale defendant was to install on the chassis a dump bed. The dump bed was in the garage premises of defendant company and apparently had come to defendant company through some other purchase or trade defendant company had made.

"3. Defendant company agreed to have the dump bed of defendant company installed on the chassis being purchased by plaintiff as part of the purchase price and arrangements for the installation of the dump bed were wholly within the control of the defendant company, and defendant com-

pany advised plaintiff that it would take from three days to one week for them to ready the truck for delivery to plaintiff after it was put in operating condition, and defendant agreed to notify plaintiff when the truck was completed.

"4. That plaintiff paid some cash down ($300.00) and was given a Bill of Sale, a receipt and a receipt for title application.

"5. That a chattel mortgage for part purchase price was executed by plaintiff in favor of Universal C. I. T. Corporation.

"6. That a policy of collision insurance was obtained on the truck naming plaintiff as insured and plaintiff and Universal C. I. T. Corporation as loss payees as interest may appear.

"7. That thereafter, in the course of preparing the automobile for delivery to plaintiff, defendant delivered the truck to James Farmer, d/b/as Kirkwood Welding Company, an independent contractor, for the purpose of having the truck body welded to the chassis. That the said Welding Company welded the body of the truck to the chassis and after the work was completed, telephoned the defendant company and talked with the aforesaid Mr. Berry, salesman employed by defendant, and advised him that the work on the truck was completed. Mr. Berry asked Mr. Farmer to drive the truck to the defendant's place of business. Mr. Farmer stated he would not drive the truck as the brakes were bad. Mr. Berry told Mr. Farmer to keep the truck at the latter's place of business and that defendant company would have the truck picked up either that day or the next day. Mr. Farmer then drove the truck out of his shop and parked it on the street in front of his shop with no lights on the truck in a place which was not illuminated by public lighting. That while so parked and sometime during the same night, the truck was struck and damaged by an automobile driven by a third party who was not an employe or agent of either the defendant or the independent contractor. That the truck was damaged by the collision in the sum of $813.50.

"8. That thereafter plaintiff was advised by defendant that his automobile truck had been damaged, and it was then determined that the aforesaid automobile truck was a total loss and was damaged beyond the worth of repair and in order to satisfy the aforesaid chattel mortgage due and outstanding, as aforesaid in paragraph '5' plaintiff was required to pay a $100.00 deductible portion and his insurance carrier $713.50 to the aforesaid finance company on the chattel mortgage of plaintiff to satisfy the account of plaintiff."

The Suburban Motors, Inc., contends that title to the truck had passed to the plaintiff and that by reason of this the seller is in the position of a bailee. It asserts that it is therefore not liable for the loss occasioned by the destruction of the truck. We are cited to 46 Am.Jur., Sales, para. 279, p. 463, which is in part as follows:

"It frequently happens that after the contract of sale is entered into, the property is accidentally lost or destroyed and the question arises in such cases as to which party must bear the loss. The ultimate determination of the question depends on whether the title has passed, since it is the general rule that in the absence of a contrary intention or agreement, the risk of loss follows the title."

There appears to be no question raised as to the sufficiency of the bill of sale and the title, for the plaintiff executed a chattel mortgage which could only be valid if title had passed to him. Shearer Motor Co. v. Burmeister, Mo.App., 216 S.W.2d 955. It will be noted, however,

that the general rule relied upon as stated in the above quotation is not effective in the presence of a "contrary intention or agreement". Here we have a contract whereby the Surburban Motors agreed to sell a truck chassis and a dump body and to build a dump truck of the two. This is a contract for work, labor and material. In 77 C.J.S., Sales, § 2, p. 585, it is stated:

"Whether a contract is one for the sale of goods, or for work and labor to be rendered may depend on whether the primary intent is merely to provide for the delivery of goods, or whether the essential consideration is work and labor to be performed at the employer's instance and for his use rather than for the producer's benefit. The distinction has been made that, if the property is not such as the seller usually has on hand for sale and in existence at the time of the sale, but is made specially for the buyer and on his special order, the contract is one for work and labor, and not of sale;"

Applying the above to the situation before us, the facts do not reveal that the property was "such as the seller usually has on hand for sale and in existence at the time of the sale". On the contrary, the dump truck was to be "made specially for the buyer and on his special order".

A situation quite similar to the one before us was discussed in Sidney Stevens Implement Co. v. Hintze, 92 Utah 264, 67 P.2d 632, 111 A.L.R. 331, where a trailer was built upon a chassis furnished by the party ordering the trailer. There the court held the transaction to be a contract for work, labor and material. See also: Mitchell Camera Corp. v. Fox Film Corp., Cal., 59 P.2d 127; Gilbert v. Copeland, 22 Ga.App. 753, 97 S.E. 251; United Iron Works v. Standard Brass Casting Co., 69 Cal.App. 384, 231 P. 567.

Since the defendant agreed to put a dump bed on the truck chassis and put it into operating condition and to deliver it to the plaintiff, he was obliged to do so. The general rule is that when one contracts to perform he is bound to do so, even though accidents or forces over which he has no control intervene, where no provision is made against such contingencies. This rule has its exceptions where there is an intervening act of God or interference by the other party to the contract; but we are not concerned with either of those here. St. Joseph Hay & Feed Co. v. Brewster, Mo.App., 195 S.W. 71; Pratt v. Schreiber, 213 Mo.App. 268, 249 S.W. 449; Ellis Gray Milling Co. v. Sheppard, 359 Mo. 505, 222 S.W.2d 742.

For the reasons stated the judgment of the trial court appears to be well supported by the facts submitted, and it is therefore the recommendation of the Commissioner that the judgment be affirmed.

PER CURIAM.

The foregoing opinion of WOLFE, C., is adopted as the opinion of the court.

The judgment of the circuit court is accordingly affirmed.

ANDERSON, P. J., MATTHES, J., and JAMES D. CLEMENS, Special Judge, concur.